INHABITANTS OF MILLIS *vs.* MARY J. FRINK.

Norfolk.    November 15, 1912. — January 28, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Pauper. Municipal Corporations,* Action against pauper under R. L. c. 81, § 9.

In an action by a town under R. L. c. 81, § 9, for expenses alleged to have been incurred for the support of the defendant as a pauper, it appeared that the defendant was a married woman and during the period in question was a pauper, that she had owned a small house in which she lived with her family, consisting of a feeble-minded and sick husband, a somewhat feeble-minded son, and, during a part of the time, a grandson, who was a schoolboy, that during the period in question she did all the household work, and that, when her husband died and her grandson had left home, she ceased to be a pauper. The action was brought to recover one fourth of the cost of the supplies furnished for the family on the ground that the defendant was supposed to have used one fourth of them. All of the supplies thus furnished had been charged by the overseers of the poor to the defendant's husband. *Held,* that the overseers of the poor well might have considered that the shelter and services contributed by the defendant toward the support of the family were equal to her share of the supplies and on this ground have determined to charge the supplies to the defendant's husband and not to her, and that under the circumstances this determination must be taken to be final.

LORING, J. When this case came on for trial the plaintiff and the defendant rested on the auditor's report. The presiding judge * ordered a verdict for the defendant, to which ruling the plaintiff town took an exception. Certain rulings were asked for by the plaintiff, and these were refused and an exception to that was taken. The case is here on a report under a stipulation that, if the ruling directing a verdict was right, judgment should be entered thereon.

The facts, found by the auditor, on which the case was submitted were in substance as follows: The action was brought under R. L. c. 81, § 9, to recover from the defendant as a pauper expenses

_____

* *Stevens,* J. The auditor was Arthur P. Hardy, Esquire.

incurred by it for her support during the six years from 1905 to 1910, inclusive. During that time the defendant owned a small house worth (so the auditor found) "probably much less than $1000," and mortgaged for $450. In this house she lived with her husband, a son and a grandson who was a minor. The defendant during the six years in question was quite feeble and unable to do any work other than light housework, "and was ill more or less." Her husband during the six years was "in feeble health, both mentally and physically," was "ill more or less, and part of the time was obliged to have a nurse." The son "now" (i. e. in December, 1911) thirty-two or thirty-three years of age, "is feeble-minded;" he worked during the six years when he could secure employment and that was about half the time, and when he earned enough he paid his mother for his board. How much he paid and when, the auditor was not able to determine. The grandson "during the early part of the time" was at school and did not earn anything. "For the past three or four years" he has been at work "and has paid the defendant board," — how much was so paid the auditor could not determine. During the six years the overseers of the poor of the plaintiff town had standing orders, one with a grocer and the other with a milkman, to supply "the Frink family" with groceries to an amount not exceeding $2 a week and a quart of milk a day; in addition, when the family was found to be in need of wood or coal, an order was given to furnish them with as much as was necessary. These supplies amounted to $815.03. In addition to the supplies thus furnished by the overseers of the plaintiff town, other supplies consisting of meat, milk, wood and coal were bought by the defendant and paid for by her with money received from her son and grandson. All the supplies furnished by the overseers, amounting, as already stated, to $815.03, were charged to the defendant's husband. The plaintiff seeks to recover from the defendant one fourth of these supplies on the assumption that she ate and used one fourth of them.

In addition to the defendant's share of these supplies the plaintiff sought to recover one fourth of the two following sums: (1) $10 furnished the defendant to pay the interest on her mortgage in the year 1905; (2) $59.33, which without solicitation on her part the overseers of the poor expended in paying the taxes on the

defendant's house during the four years 1906–1909 (inclusive), and in addition the whole of the sum of $5.63, paid in 1910 for an insurance policy on the defendant's house.

The auditor found that the taxes were paid by the overseers without the defendant's knowledge, and were paid by them "because in their opinion it was cheaper for the board to pay the taxes assessed on the defendant's real estate than to have the estate sold, and the overseers of the poor then be obliged to procure board for the defendant and the rest of the household elsewhere." Similar findings were made as to their payment of mortgage interest and of the insurance premium.

The defendant's husband died in August, 1910, and within a reasonable time thereafter the defendant paid the grocer for supplies which she bought after that date, and notified the town that she did not wish to receive any further supplies from it. The auditor found that during the period covered by this action the defendant was a pauper, but that since her husband's death she has not been and is not now a pauper.

R. L. c. 81, § 9, under which this action is brought, is a reenactment of St. 1882, c. 113. A similar (although not identical) statute enacted in 1817 (St. 1817, c. 186, § 5) was repealed by the Revised Statutes in 1836. See *Groveland* v. *Medford*, 1 Allen, 23, 24, 25. As was said by Chief Justice Chipman in *Selectmen of Bennington* v. *M'Genness*, N. Chip. 45, reprinted in D. Chip. 44, and quoted by Metcalf, J., in *Stow* v. *Sawyer*, 3 Allen, 515, 517: "The provision made by law for the relief of the poor is a charitable provision. To consider it in any other light detracts much from the benevolence of the law." This of course was quoted by Metcalf, J., after St. 1817, c. 186, § 5, had been repealed and before St. 1882, c. 113 was passed. The law is now otherwise. But the present act has been construed in a liberal spirit by this court. In *Taunton* v. *Talbot*, 186 Mass. 341, it was held, in an action under R. L. c. 81, § 9, to recover from a pauper the cost of supporting him in the plaintiff town's almshouse, that the pauper could show that the services rendered by him while an inmate were worth the amount of that cost; and if they were he was not liable.

The action of the plaintiff town in the case at bar is narrow, if not harsh. The auditor has found that the defendant was a

pauper and that finding has not been disputed by the defendant. But although the defendant is to be taken to have been a pauper it is apparent from the report that she was made one because of the burdens thrown upon her by her family consisting of a feeble-minded and sick husband, a somewhat feeble-minded son, and during a part of the time by a grandson under age and at school. To this family she gave the shelter of the house which she owned, and on the report it would seem that for this family she did all the household work. That this is the true aspect of the defendant's pauperism is shown by the fact that now, since the husband has died and the grandson has left home, the defendant is not and is found by the auditor not to be a pauper.

If the defendant were to be charged for one fourth of the supplies furnished the Frink family, because she is supposed to have used one fourth of them, the question immediately arises what was the value (1) of the shelter she gave to her husband, who was found by the auditor to be a pauper, and to her son and grandson, who on the report may have been paupers; and (2) perhaps what was the value of the services which she rendered in doing the household work for the pauper husband at any rate, and possibly for the son and grandson. Under the decision in *Taunton* v. *Talbot, ubi supra,* so far as the defendant and perhaps her husband (who were found to be paupers) were concerned she was entitled to set up the value of her services in recoupment.

The overseers of the poor have taken a broader view of the situation than that taken by the plaintiff town. They considered that these supplies were furnished not to the defendant but to her husband, and they may well have taken this view on the ground that (as in *Taunton* v. *Talbot*) the shelter and services contributed by the defendant were equal to her share of the supplies. They determined to and did furnish the supplies to the defendant's husband and not to her. Under the circumstances this must be taken to be final.

The entry must be

*Judgment on the verdict.*

The case was submitted on briefs.

*H. T. Richardson,* for the plaintiff.

*D. B. Beard & G. T. Perry,* for the defendant.