FRED ARMBURG *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   November 7, 1930. — September 10, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Workmen's Compensation Act*, To whom act applies. *Interstate Commerce. Intrastate Commerce. Railroad. Statute*, Construction. *Constitutional Law*, Interstate commerce, Police power. *Negligence*, Employer's liability.

A railroad corporation, doing in this Commonwealth both interstate and intrastate business, is subject to the provisions of the workmen's compensation act, G. L. c. 152, as to its employees while engaged in its intrastate business, and is not so subject as to its employees while engaged in its interstate business.

So construed, the workmen's compensation act does not burden the interstate business of the railroad corporation in violation of art. 1, § 8, of the Constitution of the United States.

In an action against a railroad corporation, doing in this Commonwealth both interstate and intrastate business and not a subscriber under the workmen's compensation act, for personal injuries sustained by an employee of the defendant while engaged in its intrastate business, the defence, that the plaintiff's injuries were caused by negligence of a fellow servant of the plaintiff, was not open to the defendant.

The workmen's compensation act is an exercise of the police power of the Commonwealth.

TORT.   Writ in the Municipal Court of the City of Boston dated February 10, 1930.

The action was heard in the Municipal Court by *Zottoli*, J. Material facts agreed upon and findings by the trial judge are stated in the opinion. He found for the plaintiff in the sum of $26,500 and reported the action to the Appellate Division. The report was ordered dismissed. The defendant appealed.

*A. W. Rockwood*, for the defendant.

*C. W. Rowley & D. J. Doherty*, for the plaintiff, submitted a brief.

RUGG, C.J.  The plaintiff seeks by this action to recover compensation for personal injuries sustained by him by reason of the derailment of a railroad motor car, on which he was riding in the course of his employment by the defendant, as a result of the negligence of a fellow employee. These facts, as of the time of the injury to the plaintiff, were agreed at the trial: the defendant was a common carrier for hire of freight and passengers operating tracks in Maine, New Hampshire, Vermont and New York, as well as in Massachusetts, and was conducting both interstate and intrastate commerce of considerable magnitude, and was not a subscriber under the workmen's compensation act of this Commonwealth, G. L. c. 152; the plaintiff was engaged in intrastate and not in interstate commerce; there was no evidence to support a finding that the injury to the plaintiff was due to any contractual assumption of risk on his part, or that he was not in the exercise of due care. The ruling of the trial judge that there was no evidence of negligence of the defendant as distinguished from negligence of its servants or agents is not now challenged. The trial judge also found that the injury to the plaintiff was caused by the negligence of a fellow servant, and made a finding for the plaintiff.

The defendant contends that the workmen's compensation act (hereafter called the act) is not applicable to a railroad engaged in both intrastate and interstate commerce, and that hence the defence that the injury to the plaintiff was caused by a fellow servant is open to it notwithstanding the provision of G. L. c. 152, §§ 66, 67, to the effect that such defence, with exceptions not here material, is denied to an uninsured employer. *Bernabeo* v. *Kaulback*, 226 Mass. 128.

*McGonigle* v. *O'Neill*, 240 Mass. 262, 263. It was assumed
that the act was so applicable for the purposes of the decision
in *Ashton* v. *Boston & Maine Railroad*, 222 Mass. 65, 69,
*Henshaw* v. *Boston & Maine Railroad*, 222 Mass. 459, 461,
and *Lyford* v. *Boston & Maine Railroad*, 227 Mass. 10, and
the contrary assumption was made in *Hix* v. *New York
Central & Hudson River Railroad*, 230 Mass. 309, 312. The
question was expressly left open in *Cox's Case*, 225 Mass.
220, 223, has never been and must now be decided.

At the outset it is to be observed as the basis of this opin-
ion that the act is in no way applicable to the interstate
commerce of the defendant or its employees while engaged
in that commerce. It was said in *Seaboard Air Line* v.
*Horton*, 233 U. S. 492, at 501: "it is settled that since Con-
gress, by the act of 1908, took possession of the field of the
employer's liability to employés in interstate transportation
by rail, all state laws upon the subject are superseded.
*Second Employers' Liability Cases*, 223 U. S. 1, 55." That
statement applies also to all State laws thereafter enacted;
they are void in their application to the subject of interstate
commerce, no matter how phrased.

The relevant provisions of the workmen's compensation
act are these sections of G. L. c. 152: § 1. "The following
words as used in this chapter shall, unless a different meaning
is plainly required by the context or specifically prescribed,
have the following meanings: . . . (4) 'Employee', every
person in the service of another under any contract of hire,
express or implied, oral or written, except masters of and
seamen on vessels engaged in interstate or foreign commerce,
and except one whose employment is not in the usual course
of the trade, business, profession or occupation of his em-
ployer . . . ." § 66. "In an action to recover damages for
personal injury sustained by an employee in the course of
his employment, or for death resulting from personal injury
so sustained, it shall not be a defence — 1. That the em-
ployee was negligent; 2. That the injury was caused by the
negligence of a fellow employee; 3. That the employee had
assumed the risk of the injury." § 67. "The preceding
section shall not apply to actions to recover damages for

personal injuries sustained by domestic servants and farm laborers, nor to actions for such injuries received by employees of an insured person." It is provided by § 68 that the employers' liability act, both in respect to personal injuries, G. L. c. 153, and death, G. L. c. 229, §§ 4, 7, 8, 9, 10, shall not apply to the employees of an insured person. The act as originally enacted in St. 1911, c. 751, Part V, § 2, the Part corresponding to said § 1 (4), contained, as one of the limitations on the wide sweep of "Employee" as defined, the words, and "except one whose employment is but casual." *Gaynor's Case*, 217 Mass. 86. Those words were stricken from the section by St. 1914, c. 708, § 13. That original section did not contain among the limitations upon the definition of "employee" the words, "except masters of and seamen on vessels engaged in interstate or foreign commerce"; they were added by St. 1913, c. 568, § 1.

The words of § 1 (4) just quoted are of broad import. It is difficult to confine by construction a definition of employee which states explicitly that it includes "every person in the service of another under any contract of hire," with two specified exceptions. The main purpose of the act reënforces the comprehensiveness of this definition. That purpose was to substitute a method of accident insurance, in place of the rights and liabilities established by the common law as modified by the employers' liability act and other statutes, for substantially all employees save the excepted classes, to the extent that the attainment of that result was within the jurisdiction of the General Court. It was a humanitarian measure enacted in response to the conviction that previous remedies had failed to give the extent of relief to employees for personal injuries arising out of their employment demanded by modern conditions. Although the act was optional and not compulsory, its general tenor disclosed a legislative aim to secure its wide adoption and use. The interpretation of the act has been and ought to be, so far as reasonably practicable, to promote the accomplishment of its beneficent design. Express exclusion of two classes of employees from the operation of the act and the enactment of two amendments to the excluding clause are strong in-

dications that all others within the natural purport of its language were to be included. If it had been the intent of the Legislature to exclude railroads engaged in interstate commerce from the operation of the act, it would have been a simple matter to state that intent in unequivocal language. The words, purpose, and legislative history of the act as now phrased require the conclusion that it was intended to be applicable to all classes of injuries therein described within the competency of the legislative department. "The statute is as broad as the jurisdiction of the Commonwealth." *Kinney* v. *Treasurer & Receiver General*, 207 Mass. 368, 369. *Young* v. *Duncan*, 218 Mass. 346, 349. *Gillard's Case*, 244 Mass. 47, 51, 52. *Toland's Case*, 258 Mass. 470, 472. The decision in *Zoulalian* v. *New England Sanatorium & Benevolent Association*, 230 Mass. 102, rests upon the general principle of exoneration of charitable trusts from liability for negligence of their servants and agents. There was no ground for substitution of workmen's compensation liability because there was at common law no liability. *Roosen* v. *Peter Bent Brigham Hospital*, 235 Mass. 66.

The jurisprudence of the State is supreme and exclusive over personal injuries received by railroad employees while engaged in intrastate commerce. *Corbett* v. *Boston & Maine Railroad*, 219 Mass. 351, 356. *Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240, 245–246, and cases there reviewed. *Commonwealth* v. *Potter*, 254 Mass. 271, 273. It was said in *Wabash Railroad* v. *Hayes*, 234 U. S. 86, 89–90: "Had the injury occurred in interstate commerce . . . the Federal act undoubtedly would have been controlling and a recovery could not have been had under the common or statute law of the State; in other words, the Federal act would have been exclusive in its operation, not merely cumulative. [Cases cited.] On the other hand, if the injury occurred outside of interstate commerce, the Federal act was without application and the law of the State was controlling. *Illinois Central Railroad* v. *Behrens*, 233 U. S. 473." *Taylor* v. *Taylor*, 232 U. S. 363, 368. *Michigan Central Railroad* v. *Vreeland*, 227 U. S. 59, 66–67. *Toledo, St. Louis & Western Railroad* v. *Slavin*, 236 U. S. 454.

*Raymond* v. *Chicago, Milwaukee & St. Paul Railway*, 243
U. S. 43, 45.   There are numerous cases where decisions of
State courts have been reversed because recovery had been
allowed under workmen's compensation laws when, as the
United States Supreme Court held, the injury had occurred
while the employee was engaged in interstate commerce and
where, therefore, the State laws were inapplicable and the
Federal employers' liability act governed the rights and
liabilities of the parties.   *New York Central Railroad* v.
*Winfield*, 244 U. S. 147.   *New York Central Railroad* v.
*Porter*, 249 U. S. 168.   *Southern Pacific Co.* v. *Industrial
Accident Commission*, 251 U. S. 259.   See, also, *American
Railroad* v. *Birch*, 224 U. S. 547.   It does not appear to have
been suggested in any of these decisions that railroad
corporations were not subject to State workmen's com-
pensation acts as to their intrastate business.   It was said
by Chief Justice Marshall in *Gibbons* v. *Ogden*, 9 Wheat. 1,
at page 195: "The completely internal commerce of a
State, then, may be considered as reserved for the State
itself."

Both the words and the purpose of the act seem to require
the conclusion that, with respect to the injury to the plaintiff
occurring while he was engaged in intrastate commerce, the
defendant is deprived of the defence that the injury was
caused by a fellow servant of the plaintiff.

There is nothing contrary to this conclusion in *Cox's Case*,
225 Mass. 220.   It there was held that an employer must
insure the whole of his business conducted within the Com-
monwealth as a single commercial or manufacturing entity,
in order to secure the benefits of the act, and could not
accept the act as to one part of that business and reject it
as to another part.   Transportation companies conducting
both intrastate and interstate commerce were expressly
excepted, at page 223, from the scope of that decision.
Whatever was there said was directed to the issue then
before the court.   The act does not require, and the decision
in the *Cox* case does not mean, that an employer must insure
branches or departments or kinds of businesses which for any
reason are not within the jurisdiction of the General Court

and thus necessarily outside the scope of the act. An employer, conducting some business within the jurisdiction of the General Court and other business outside that jurisdiction, may insure under the act with respect to his employees in the part of his business within that jurisdiction and secure with respect to them all the benefits of the act unaffected by the circumstance that he continues to conduct the part of his business outside that jurisdiction without such insurance; and he may continue to conduct this latter part of his business under the principles of legal obligation governing it, free from any effect flowing from insurance under the act as to the other part of his business conducted within the jurisdiction of the General Court. It is an implied condition of all statutes that they are intended to be operative only within the jurisdiction of the legislative body enacting them. This statement is subject to the limitation that, where an insured employer makes a contract in Massachusetts with one to become his employee and to do work outside the Commonwealth, there may be recovery under the act by the employee, if injured, according to the terms of St. 1927, c. 309, §§ 2, 3. *Pederzoli's Case*, 269 Mass. 550. *McLaughlin's Case*, 274 Mass. 217. See *Keaney's Case*, 217 Mass. 5; compare *Gould's Case*, 215 Mass. 480.

It is often a question of difficulty whether a particular injury arose out of intrastate or interstate commerce. That difficulty exists quite apart from the act and is not enhanced by its provisions. It is inherent in the complexities of the business of conducting a railroad in different States and transacting both intrastate and interstate business. There are differences in certain instances as to the persons entitled to recovery and the persons to whom the amount recovered may ultimately be payable under the Federal employers' liability act and under the workmen's compensation act. These and other differences appear to us to constitute merely difficulties of a kind not infrequently encountered in the practical administration of affairs, but not to amount to insurmountable obstacles in the way of construing the scope of the statute according to its words and purpose.

The same employees may be engaged alternately during

stated periods in intrastate and in interstate commerce. It may not be possible for the defendant to make a rigid classification of its employees between those engaged in intrastate and those engaged in interstate commerce, or to separate the two kinds of traffic. That is not required. There is nothing in the record to indicate that reasonably accurate estimates of the proportion of time of employees spent in intrastate and interstate commerce cannot be made. The contrary cannot be assumed in the absence of proof. It may be troublesome for the defendant to establish a basis for the insurance of the portion of its employees engaged in intrastate commerce. That, however, is a legislative and not a judicial question. We can only interpret the statute as it was framed. *Arruda* v. *Director General of Railroads*, 251 Mass. 255, 262–263.

The same considerations apply to rules and regulations for the prevention of accidents required by G. L. c. 152, § 64. Such rules and regulations could not interfere with interstate commerce. So far as relevant exclusively to intrastate commerce, they do not go outside the legislative domain of this Commonwealth.

Reliance is placed by the defendant on the contention that, if under the act it should insure its employees so far as engaged in intrastate business, it would not be relieved of the liability for the death of such an employee imposed by G. L. c. 229, § 3, and that, therefore, the Legislature could not have intended the act to apply to a carrier like the defendant. The liability imposed by said § 3 is in the nature of a penalty for causing the death of an employee in the circumstances there set forth. It was first enacted in substance by St. 1883, c. 243. It has since remained in our statutes. It was unaffected by the enactment of the employers' liability act, St. 1887, c. 270, §§ 2, 3. The history of these statutory developments touching recovery of damages for causing death is set forth in detail in *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8. If it be assumed that the operative force of said § 3 would not be affected as to the defendants by its becoming insured under the workmen's compensation act, that does not justify the

inference that the Legislature did not intend to include railroad corporations conducting both intrastate and interstate commerce within the sweep of the act. The liability established by said § 3 is punitive in nature; the penalty is to be assessed solely with reference to the degree of culpability of the defendant, or its agents or servants, and it coexists now as always hitherto with the liability for death established by the employer's liability act. G. L. c. 229, §§ 4, 7, 8, 9, 10. G. L. c. 153. The measure of damages and the basis of liability are different under said § 3 and under said § 9.

The intention of the General Court in enacting any statute must be ascertained, not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part, and in the light of the common law and previous statutes on the same subject. *Robinson's Case,* 131 Mass. 376, 377. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 374. *Commonwealth* v. *Welosky, ante,* 398, 401, 402. Giving full weight to that principle, we think that the act is applicable to the defendant as to its employees while engaged in intrastate commerce.

The defendant contends that thus interpreted the act is unconstitutional as applied to the defendant, in that it imposes an undue burden upon interstate commerce contrary to art. 1, § 8, of the Constitution of the United States. No statute of the Commonwealth can impose a burden upon interstate commerce. That is fundamental under our dual system of government. *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* 262 Mass. 137, 149, and cases cited. *Sprout* v. *South Bend,* 277 U. S. 163. The *Minnesota Rate Cases,* 230 U. S. 352, 398–412. *New Jersey Bell Telephone Co.* v. *State Board of Taxes & Assessments,* 280 U. S. 338, 346. In *Sherlock* v. *Alling,* 93 U. S. 99, at page 103, it was said: "In conferring upon Congress the regulation of commerce, it was never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect com-

merce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution." *Pennsylvania Railroad* v. *Hughes,* 191 U. S. 477, 488. *Missouri Pacific Railway* v. *Castle,* 224 U. S. 541, 544–545. *Chicago, Milwaukee & St. Paul Railway* v. *Solan,* 169 U. S. 133, 137–138. The workmen's compensation act is an exercise of the police power of the Commonwealth. *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 238–239. *Madera Sugar Pine Co.* v. *Industrial Accident Commission,* 262 U. S. 499, 501–502.

The provisions of G. L. c. 152, as herein interpreted, do not in our opinion burden the interstate commerce of the defendant. Whether the defendant shall avail itself of that act is wholly optional with it. If it does not insure in accordance with its provisions, it cannot, in common with all other employers in like situation, interpose the defences of assumption of risk, contributory negligence, or the fellow servant doctrine in actions for personal injury brought against it by its employees engaged in intrastate commerce. It was said touching this subject in *Opinion of the Justices,* 209 Mass. 607, at page 610: "The rules of law relating to contributory negligence and assumption of the risk and the effect of negligence by a fellow servant were established by the courts, not by the Constitution, and the Legislature may change them or do away with them altogether as defences (as it has to some extent in the employers' liability act) as in its wisdom in the exercise of powers entrusted to it by the Constitution it deems will be best for the 'good and welfare of this Commonwealth.' Const. Mass. c. 1, § 1, art. 4. See *Missouri Pacific Railway* v. *Mackey,* 127 U. S. 205; *Minnesota Iron Co.* v. *Kline,* 199 U. S. 593." To the same effect are *New York Central Railroad* v. *White,* 243 U. S. 188, 200, and cases cited, and *Silver* v. *Silver,* 280 U. S. 117, 122. If the defendant insures in conformity to the provisions of the act, it need not insure its employees so far as engaged in interstate commerce. It can gain whatever advantages arise from accepting the act by confining its insurance strictly to its employees to the extent they are engaged in intrastate commerce. The defendant, therefore,

would be required to pay premiums based not on its entire payroll, but only on the part of its payroll rightly allocated to intrastate commerce. The rule of the commissioner of insurance requires that "Compensation Insurance policies shall not be written except upon the basis of the entire payroll of the assured which is the subject of Insurance." As applied to the defendant this rule means only its payroll of those of its employees engaged in intrastate commerce in Massachusetts and those, if any, entitled to the benefits of St. 1927, c. 309, §§ 2, 3. That is the only payroll of its employees subject to insurance. Seemingly it may be ascertained by determining the number of hours of employees spent in intrastate commerce. Such premiums would not be a burden upon interstate commerce. If such insurance would have any effect on interstate commerce, it would be purely incidental and therefore would infringe upon no constitutional inhibitions. *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261 Mass. 445, 450. *Interstate Busses Corp.* v. *Holyoke Street Railway*, 273 U. S. 45. See cases collected in *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, at 578.

If the defendant is advised that the rules of the commissioner of insurance as at present framed do it an injustice, that does not render the act unconstitutional. The law doubtless affords remedies if on proper representation that official does not make rules just and legal in their operation on the defendant.

It cannot be presumed, in the absence of any evidence or finding, that a fair and equitable method of ascertaining and computing the premiums due from the defendant in respect to insurance of its employees engaged in intrastate commerce cannot be worked out if it desires to become an insured employer under the act. Certainly we cannot take judicial notice that there is any such practical impossibility. The evidence in the present record does not require a finding of that nature. The defendant requested no ruling on this point and hence it is not open to it.

The essential points of the case at bar, so far as they relate to interstate commerce, seem to us to be concluded against

the contention of the defendant by the decisions in *New York Central Railroad* v. *White*, 243 U. S. 188, and *Hawkins* v. *Bleakly*, 243 U. S. 210.

*Order dismissing report affirmed.*