CITY OF WORCESTER *vs.* ELIZABETH T. QUINN.

Worcester.    September 25, 1939. — November 9, 1939.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Old Age Assistance.    Contract*, Implied.

The receipt of old age assistance payments under G. L. (Ter. Ed.) c. 118A by one entitled thereto, in the absence of fraud, accident or mistake, did not create any common law liability on his part to reimburse the municipality therefor, either at the times of such payments or at a

later time when he became possessed of a substantial amount of property.

A municipality has no remedy under G. L. (Ter. Ed.) c. 117, § 5, as amended by St. 1937, c. 125, for reimbursement of payments made as old age assistance under c. 118A.

The last sentence of § 4 of G. L. c. 118A, as appearing in St. 1936, c. 436, § 1, does not create a liability on the part of a recipient of old age assistance payments to reimburse the municipality therefor, but leaves his liability to be governed by the common law.

CONTRACT. Writ in the Superior Court dated March 17, 1939.

The action was heard on an agreed statement of facts by *Donnelly,* J., who found for the plaintiff in the sum of $1,950. The defendant appealed.

*L. E. Felton,* for the defendant.

*A. M. Hillman,* Assistant City Solicitor, for the plaintiff.

RONAN, J. The city seeks reimbursement for payments made under G. L. (Ter. Ed.) c. 118A in rendering old age assistance to the defendant. The case was submitted to the Superior Court upon an agreed statement of facts from which it appears that the city made payments (usually semi-monthly), in accordance with the provisions of that chapter, commencing July 20, 1932, ending February 25, 1937, and totaling $1,950; that the defendant, a resident of Worcester for many years and having a legal settlement therein, is eighty-one years of age; that on or about March 1, 1937, she inherited $7,200 from her cousin, of which sum $5,800 is now in the possession of her conservator, who was appointed on February 16, 1937, by the Probate Court for the county of Worcester. The defendant appeals from a finding for the plaintiff in the full amount claimed.

The plaintiff contends that the defendant is under an implied contractual obligation to reimburse it for the amounts paid and that the city has a remedy under either G. L. (Ter. Ed.) c. 117, § 5, as amended by St. 1937, c. 125, or under c. 118A, § 4, as appearing in St. 1936, c. 436, § 1, by which it can recover such payments.

The payments were authorized by the statute and were not made in pursuance of any contract between the parties. Their receipt by the defendant — who the city does not

contend was not entitled to the benefits of the statute at the time the payments were made — did not impose upon her any present obligation to reimburse the city. Such payments did not create the relationship of creditor and debtor. They were made for her personal use and assistance and were to be expended by her for her immediate needs and necessary expenses. In the absence of a statutory provision, there was no enforceable obligation upon the part of the defendant to reimburse the city. In an early case, it was said: "If no debt existed at the time, none could arise afterwards in consequence of a change of circumstances in the pauper." *Deer-Isle* v. *Eaton,* 12 Mass. 327, 328. *Marlborough* v. *Framingham,* 13 Met. 328. *Groveland* v. *Medford,* 1 Allen, 23, 25. *Stow* v. *Sawyer,* 3 Allen, 515. *Taunton* v. *Talbot,* 186 Mass. 341.

The plaintiff contends that it has a remedy under G. L. (Ter. Ed.) c. 117, § 5, as amended by St. 1937, c. 125, which provides that "A person, his executor or administrator, shall be liable in contract to any town for expenses incurred by it for his support." This section is a portion of a statutory system governing the granting of relief to poor and indigent persons who are in need of immediate support. The relief of the poor has been imposed upon cities and towns since colonial days. The defendant did not apply for or seek relief as a poor or indigent person under c. 117, and the city makes no contention to the contrary, and the agreed facts show that no such relief was accorded. All payments were made under c. 118A. It is contended that the remedy given for reimbursement under c. 117, § 5, is applicable to the payments made in accordance with c. 118A. That section, when employed in its limited field to recover expenses for support of a poor and indigent person, does not change the liberal and beneficent spirit of our statutes granting relief to the poor, and it has never been broadly construed to reach a case that did not literally and plainly come within its terms. *Newburyport* v. *Creedon,* 148 Mass. 158. *Taunton* v. *Talbot,* 186 Mass. 341. *Millis* v. *Frink,* 213 Mass. 350. *Marlborough* v. *Lowell,* 298 Mass. 271. The city is not endeavoring to recover for such expenses but is attempt-

ing to collect for payments made for adequate assistance to
an aged citizen. Such payments are different in amounts,
in their purpose, in the ultimate source of the funds distrib-
uted, in the supervision of the disbursing agencies and the
eligibility of the recipients, from the relief granted by goods
or money, in amounts determined by the overseers of pub-
lic welfare, to poor and indigent persons who may be tem-
porarily or permanently located within a town. The terms
of § 5 cannot be interpreted to permit the recovery of pay-
ments such as were made to the defendant. Chapter 117
and c. 118A deal with entirely different subjects, each is
separate and independent of the other, and each constitutes
a complete and inclusive statutory system for the regula-
tion and control of a particular phase of governmental
activity. Each contains its own remedy for the enforce-
ment of its own provisions. The scope of § 5 of c. 117 is
limited to relief granted to the poor under that chapter,
and it cannot be extended to enforcing any rights under
c. 118A or be in any way considered a part of this last
mentioned chapter. It does not authorize suits to recover
payments for old age assistance. *Brooks* v. *Fitchburg &
Leominster Street Railway,* 200 Mass. 8. *Inspector of
Buildings of Falmouth* v. *General Outdoor Advertising Co.
Inc.* 264 Mass. 85. *Slack* v. *Inspector of Buildings of Welles-
ley,* 262 Mass. 404. *Finnegan* v. *Checker Taxi Co.* 300 Mass.
62, 68.

A person having an equity in real estate upon which he
resides, of a value in excess of $2,000, is not disqualified
from receiving old age assistance if he executes a bond in
the penal sum of the value of the equity in excess of $2,000
conditioned on the repayment of all amounts of such as-
sistance, such bond to be secured by a mortgage upon the
real estate. "Out of the proceeds realized by the town from
any such bond and mortgage or from the estate of a person
granted assistance under this chapter, or both, the federal
government, through the commonwealth, shall be reim-
bursed to an amount not exceeding the amount contributed
by it in such case and the remainder shall be apportioned
between the commonwealth and the town furnishing the

assistance in proportion to the amounts of their respective contributions." G. L. (Ter. Ed.) c. 118A, § 4. See now St. 1938, c. 467. This section first appears in St. 1936, c. 436, § 1, which substituted an entire new chapter for the former c. 118A, and this statute was approved as an emergency measure on June 30, 1936.

The social security act, so called (Act of August 14, 1935, c. 531, 49 U. S. Sts. at Large, 620, U. S. C. Sup. IV, Title 42, §§ 301–306, inclusive), was regarded with favor by our Legislature. St. 1935, c. 494. See now St. 1936, c. 436. This act of Congress provided for the grant of Federal funds for old age assistance to such States as should adopt an old age assistance plan containing certain requirements, one of which was that "if the State or any of its political subdivisions collects from the estate of any recipient of old-age assistance any amount with respect to old-age assistance furnished him under the plan, one-half of the net amount so collected shall be promptly paid to the United States." 49 U. S. Sts. at Large, 620, § 2, U. S. C. Sup. IV, Title 42, § 302. The only matter covered by this provision of the act of Congress and by our own statute which incorporated it, was to provide for the apportionment and distribution of such proceeds as may be realized from the estate of a recipient of aid, and both enactments left untouched any liability upon the part of the estate of a recipient to reimburse the city. A statute is to be fairly and reasonably construed and its scope is not to be extended by construction beyond its apparent limits. *Prondecka* v. *Turners Falls Power & Electric Co.* 238 Mass. 239. *See* v. *Building Commissioner of Springfield*, 246 Mass. 340. *Martinelli* v. *Burke*, 298 Mass. 390.

Both Congress and our own Legislature were content to let that liability continue to rest upon the principles of common law and to share in the proceeds of actions where payments had been made through accident, fraud or mistake. The mere right to share in one half of the net amount collected from the estate of a recipient of aid, without establishing any obligation upon the part of the estate to pay and without creating any new remedy, must be construed to

mean that the collection from the estate must be had by present remedies under our existing law. This conclusion is also supported by the relationship existing between the Federal and State governments in the establishment and maintenance of old age assistance. The national government limits grants of Federal funds to States which comply with the terms and conditions of the grants of Federal funds to them, but the administration and execution of State plans for such·assistance are left to a State agency, which functions entirely as a representative of the State. In referring to the social security act and a State statute establishing an unemployment compensation system, it has been said: "Together the two statutes now before us embody a coöperative legislative effort by state and national governments, for carrying out a public purpose common to both, which neither could fully achieve without the coöperation of the other." *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495, 526. *Steward Machine Co.* v. *Davis,* 301 U. S. 548.

The purpose of Congress in requiring partial reimbursement from the estate of a recipient is plainly shown by the legislative history of the enactment containing this provision. It will suffice to show not only the intent of Congress but incidentally the meaning of the term "estate" which has been given different shades of meaning in our own decisions depending upon the circumstances in which the term was employed. See *Laing* v. *Barbour,* 119 Mass. 523; *Daniels* v. *Pratt,* 143 Mass. 216; *Smith* v. *Shaw,* 150 Mass. 297; *Proprietors of the Cemetery of Mount Auburn* v. *Mayor & Aldermen of Cambridge,* 150 Mass. 12; *Flynn* v. *Flynn,* 171 Mass. 312; *Whitman* v. *Taylor,* 182 Mass. 37; *Gordon* v. *Shea,* 300 Mass. 95. Resort may be had to the various steps in the enactment of a statute to resolve any ambiguity that might appear in its phraseology. *Plunkett* v. *Old Colony Trust Co.* 233 Mass. 471. *Hood Rubber Co.* v. *Commissioner of Corporations & Taxation,* 268 Mass. 355. *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312. *Wright* v. *Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U. S. 440.

Report No. 615 of the committee on ways and means recommended the passage of the social security bill (H. R. 7260). The bill then contained § 206, captioned "Overpayments during life," which provided that "If any recipient, through error or otherwise, has received benefit payments in excess of the amount to which he is entitled, and dies before such overpayments have been adjusted" then his estate shall repay a certain amount to the United States. In the same report, at page 17, it appears that the purpose of this section was to secure from the State one half of the Federal contributions paid to recipients from whose estates the State has recovered on account of payments "because those persons had been defrauding the State." The committee on finance, report No. 628, recommended the adoption of bill H. R. 7260 containing said § 206, and gave (page 29) the same explanation of the purpose of this section as did the committee on ways and means. It is clear that Congress merely provided for reimbursement from the estate of a deceased recipient who had through error or fraud received overpayments during his lifetime. And the only purpose of our Legislature in enacting that portion of what now is § 4 of c. 118A relative to reimbursement, other than from bond or mortgage, from the estate of a recipient of aid, was a declaration of the public policy of this Commonwealth that when recovery was had one half of the proceeds would be paid to the national treasury. *Phelps* v. *Board of Education of West New York*, 300 U. S. 319. *Dodge* v. *Board of Education of Chicago*, 302 U. S. 74.

Section 4, upon which the city relies, does not impose any statutory obligation on the defendant to make reimbursement. The division of the proceeds of a suit between the Federal, State and municipal governments is a matter entirely different from the obligation of a citizen to make payment to one of them for the benefit of all three. In the absence of any statute creating a right of action against the estate, the liability of the latter must be determined by the common law. *National Fire Ins. Co.* v. *Goggin*, 267 Mass. 430. *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418. *Levin* v. *Wall*, 290 Mass. 423. Under that law there can

be no recovery where payments were not made by accident, fraud or mistake. *Richardson* v. *Brown*, 260 Mass. 509. *Stoneman* v. *Boston*, 263 Mass. 255. *McLaughlin* v. *Exchange Trust Co.* 272 Mass. 158. *Carey* v. *Fitzpatrick*, 301 Mass. 525.

*Judgment for the defendant.*