TOMASELLO, J.
In an action in contract initiated by writ dated June 29, 1950, under G. L. (Ter. Ed.) c. 118A, § 4A as amended, with the written approval of the Massachusetts Department of Public Welfare, to recover old age assistance rendered by the plaintiff to the defendant under this chapter, the parties submitted the cause upon a “Case Stated.”
The material facts presented by stipulation disclosed that the defendant received old age payments from January 7, 1949 to> March 14, 1950 inclusive in the sum of $1,084.12.
On Septembed 6, 1949, a brother of the defendant died leaving a will bequeathing five thousand dollars to the defendant. The will was duly allowed and four thousand dollars of the legacy was paid to the defendant on November 18, 1949. At the time this action was commenced the defendant had $1,484.12 of the legacy in his possession.
The defendant agrees that the plaintiff is entitled to recover the old age assistance paid to the defendant *[110] from November 19, 1949, the date he received the $4,000.00 from the executor to March 14, 1950.
The sole question presented to the trial judge was whether the plaintiff was entitled to recover for the rest of the old age assistance paid to the defendant, to wit, from January 7, 1949 to November 18, 1949. The court found for the plaintiff in the amount of $1,084.12 withinterest from the date of the writ, i.e., for the total amount of payments from January 7, 1949 to March 14, 1950. The report raises the question of whether the finding of the trial judge was correct.
G. L. (Ter. Ed.) c. 118A, § 4A as inserted St. 1941, 729,; § 5 and as amended by § 3 of St. 1948 c. 581, provides that
“A person shall be liable in contract to any town for expenses incurred by it under this chapter for assistance rendered to such person under this chapter if such person is in possession of funds not otherwise exempted, provided action is commenced against such person within six years next after the date when said person last received assistance or support under this chapter or chapter one hundred and seventeen. The executor or administrator of such person shall likewise be liable for such expenses if the estate of such person is in possession of funds not otherwise exempted thereunder, but in any action therefor the defense of the statute of limitations shall not be available to the executor or administrator except as provided in chapter one hundred and ninety-seven. In no event, however, shall any action be brought under this section in behalf of a town except with the written approval of the department.”
G. L., (Ter. Ed.) c. 118A relating to old age assistance came into being as a result of Social Sscuity legislation enacted by Congress. Under the provisions of the federally created old age assistance acts the Federal government obligated the States accepting the national plan, to pay out and use sums appropriated for this purpose exclusively for old age assistance. U. S. Code Title 42, § § 301-306 incl.
Under the provisions of 42 USC, § 304 a State imposing prohibited requirements in relation to old age assistance as called for by § 302(a) is subject to forfeit its right to payments for that purpose.
The national government limits grants of Federal funds to States which comply with the terms and condition of the grants of Federal funds to them, but the administration and execution of the State plans for such assistance are left to the State. Worcester v. Quinn, 304 Mass 276, 281.
*[111] A requirement of the Federal Act is for the repayment by the State of one half of the net amount1 collected from the estate of a recipient, or the recipient himself, where paid under this plan by fraud, accident or mistake. There is nothing in the Act of Congress that indicates any other obligation for reimbursement, and therefore the common law rule is applicable under the Federal Act. Worcester v. Quinn, 304 Mass. 276.
The plaintiff contends that by the passage of G. L. c. 118A, § 4A as amended, the language thereof is explicit enough to go beyond the common law requirement which the Federal government is content to accept as the basis for reimbursement and to require recipients of old age assistance and their estates to refund sums paid during the entire period of need, in the event he or his estate comes into possession of funds not otherwise exempted, during or subsequent thereto, and regardless of the question of fraud or overpayment.
It is likewise contended by the plaintiff that St. 1948, c. 581 and included in G. L. c. 118A, § 4A, passed subsequent to the decision in . Worcester v. Quinn, supra, permitted reimbursements in such cases where the aforementioned decision concluded were beyond the scope of our laws.
St. 1948, c. 581 is entitled, “An Act relative to the enforcement of claims of Cities and Towns against ‘Estates’ of deceased persons chargeable to said Cities and Towns.” It calls attention to the right of Cities and Towns to be reimbursed by estates of deceased beneficiaries. The question raised is whether the legislature intended that this Act should be all embracing so as to include repayments in cases other than those in which payments were made through accident, fraud or mistake?
A statute is to be fairly and reasonably construed and its scope is not to be extended by construction beyond its apparent limits. Worcester v. Quinn, supra.
In its interpretation, the enactment by the State should be construed in relation to the purposes and objectives of the Federal Act. Duggan v. Bay State Street Ry, 230 Mass. 370, 374; Multnomah County v. Luihn et al, 180 Ore. 528, 534, 535; Meredith v. Frost, 295 Ky. 137.
Together (the Federal and State Acts) the two *[112] “statutes” embody a cooperative legislative effort by state and national governments to carry out a public purpose common to both, which neither could achieve without the cooperation of the other. Worcester v Quinn, 304 Mass. 276, 281. Attention is called to the above description of the Federal and State Acts as “statutes”, and similar attention is called to the use of the word “statute” in the decision of the Worcester v. Quinn case wherein the court stated, “In the absence of any “statute” creating a right of action against the estate of the recipient of old age benefits, the liability of the estate must be determined by the common law.”
The plaintiff contends that the latter use of the word “statute” means “State statute”. This by the decision is not clear. The court might well have meant “Federal statute”.
The Federal provisions of 42 USC, § 302, make the administration by the States accepting the plan for old age assistance mandatory upon them. • This section of the Act does not require states to exact reimbursement from recipients or their estates for old age assistance. Dept. of Public Welfare v. Potthoff, Ind. 1942. Under these circumstances recovery is had in instances of distribution of funds on account of fraud or error. Allen County v. Potthoff, supra, 497.
It is clear that the Federal Act and the State Old Age Assistance Act are comparatively recent enactments of progressive legislation intended to alleviate the principal causes of insecurity in the economic life of this country. When a state old age assistance act is approved by the United States in accordance with the provisions of the Federal Act, the two statutes interlock in carrying out the intent of the Federal Act, and the State statute should be liberally construed in favor of the United States. Rivard v. Bijou Furniture Co., 67 R. I. 251.
Amounts collected by the State under the Social Security Act are considered as a special fund in trust for the United States. Rivard v. Bijou Furniture Co., supra. The State Old Age Assistance Act must be read in connection with the Federal Social Security Act, and together the acts constitute what is known as “grant-in-aid legislation” under which the cost of old age assistance is borne, and a matter or thing found to be within the intention of the legislature by necessary inplication has the same effect as if expressed in the *[113] statute. Dept. of Public Welfare v. Potthoff; Hyland v. Rochelle, 179 Ind. 671.
The purpose and intent of the Old Age Assistance Act was to restore the old-aged citizen in need to a position of dignity without the necessity of applying for welfare aid. To take from him that which by the fruits of his lober he may have accumulated after" his need had ceased or which others may have by will or grant intended should relieve him to some degree from a pauper’s fate would be in derogation of the purposes for which the Federal Act was enacted.
It would seem that state laws enacted in contravention, of the Federal act would be void in their application to the subject of old age security. Amburg v. B. & M. R. R., 276 Mass. 418, 420.
The Federal act seeks to set up a uniform system of administering old age assistance. To deviate therefrom so that by statute some states might exact reimbursement with no compulsion to repay the Federal government under its laws, while others under the same circumstances would not need to exact repayments, would be contrary to the uniform intent and spirit of said act. It would create an added burden not intended by the act depending upon the State in which the recipient received old age assistance. Likewise, it would be difficult, in the event that the recipient moved out of the legislating state into another where such legislation was not in effect, to conceive of the latter state or the Federal Court in which the recovery might be sought making recognition by way of comity or otherwise of such legislation which would be contrary to the Federal or State requirement therein.
The state-wide administrative plan under the Federal old age assistance plan is mandatory upon the cities and towns and may not be varied by them. Multnomah County v. Luihn et al, 180 Ore. 528, 533.
Although the language of G. L. c. 118A, § 4A may appear to be explicit, yet it could not be construed as one obligating a citizen to make payment to one of the (Federal, State and municipal government) for the benefit of all three, since there is no provision in the Federal Act through which the Federal government could receive such a benefit by way of reimbursement. Such a construction of the State law would enable the State to retain the proceeds of repayments for its own use and benefit without an obligation to refund by *[114] Federal law, and as such would contravene the intent and purpose of the Federal Act, which was to protect in the event of payments “because the persons had been defrauding the State” or because of payments made through error or accident.
In a preliminary report of the legislative committee investigating pensions and old age assistance, dated December 3, 1947 and relating to House Bill No. 1751 which embodies the enactment of the act referring to enforcement of claims against estates of recipients St. 1948, (c. 581, § 3), the committee reported on pages 7 and 8, “Many of the old age assistance agents consulted reported on cases where the old age recipient died, and then the heirs in many cases of distant relationship to the deceased, realized very large sums from the sale of real estate. The committee believes that the spouse or child of a recipient is entitled to ownership of the real estate, and is of the opinion that this should apply only to cases arising after the effective date of the act.”
It would seem that the legislature was primarily concerned with recovery against estates of recipients rather than against the recipients themselves. In situations of real estate of excessive value held by recipients the State was required to be protected by bond, which was not the case as against his estate. The concern of the legislature appeared to be with those instances where subsequent to the death of the recipient it was discovered that he possessed more than permitted during his lifetime for old age assistance. In this respect he was defrauding the State. In such a situation the estate was not to escape responsibility for his acts of concealment.
It is further evident from the report that our legislature was intent on protecting the spouse or child of a recipient in the possession of the property of the recipient. This would be incapable of accomplishment if during the lifetime of the recipient he were to be divested of property that might come into his possession by grant, will of otherwise.
By the passage of House Bill No. 1901 as an insert to G. L. c. 118A, § 4A, it would also appear that G. L. 118A, § 4A was intended for the purpose of depriving the recipient’s estate of the defense of the statute of limitations in cases where sums were paid through fraud, error or mistake.
*[115] Although statutes are often unnecessary because of the remedy afforded by the common law, yet on many occasions the legislature enacts statutes which are considered as statements of public policy. G. L. c. 118A, § 4A is such a statement of public policy established under the Federal Act and the legislative intent was not to enlarge upon the requirements and conditions under the Federal Act.
It is evident that the legislature did not intend to jeopardize the States’ right to receive Federal grants by non-compliance with Federal requirements. Nor did it intend to give to recipients of this State any lesser rights enjoyed by citizens of other States not having such legislation.
It is not the intention of the legislature that the State statute (G. L. c. 118A, § 4A) should have any other meaning than to reaffirm the right of the State to reimbursement not only as against the citizen, but also against his estate in the event that payments for old age assistance should be made by fraud, accident or mistake. Without a Federal statute permitting of a different construction the State statute could have no other meaning.
In the opinion of the majority it was error for the trial judge to have found for the full amount of old age assistance payments made to the defendant. The finding should have been for payments made during that period subsequent to the receipt of the. legacy by the defendant, which was from November 19, 1949 to March 14, 1950 inclusive, in the sum of $275.80.
Ordered:
Judgment for the plaintiff in the sum of $275.80 with interest from the date of the writ.
Gillen, J. concurring.
* * *