### Beverly Willette, Admx. of the Estate of Lester Gilbar v. Vermont Department of Social Welfare

[276 A.2d 608]

No. 81-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 7, 1971

*W. Averell Brown,* Bennington, for Plaintiff.

*James M. Jeffords,* Attorney General, and *William S. Roby, III,* Assistant Attorney General, for the State.

**Shangraw, J.** This appeal was originally docketed in the Court as *Lester Gilbar* v. *Vermont Department of Social Welfare,* and was set down for hearing during the 1970 December Term of this Court. Mr. Gilbar passed away before the case was heard. The case was continued. By order dated January 7, 1971, this Court substituted as party-appellant the decedent's granddaughter, Beverly Willette, in her capacity as administratrix of the Estate of Lester Gilbar.

Prior to September, 1969, Mr. Gilbar, age 73 years, applied for and received old age assistance from the Department of Social Welfare, pursuant to the provisions of Chapter 30 of Title 33, V.S.A. and the regulations promulgated thereunder. Mr. Gilbar informed his granddaughter, Beverly Willette, that under certain conditions he would be willing to transfer to her a remainder interest in real property located in the town of Bennington which was used as a residence by himself and wife prior to her death. At the last valuation by the listers of the Town of Bennington, this real estate was valued at $1,220 or at a fair market value of $2,440.

By reason of Mr. Gilbar's infirmities he was admitted as a patient in the Montoe Park Nursing Home of Vermont, Bennington, Vermont. At the time the recipient entered the Montoe Park Nursing Home for care, an application was filed by, or on his behalf, with the Bennington County Office of the Department of Social Welfare of the State of Vermont, requesting assistance of the Department in paying the cost of

his care in the nursing home. At the time his total income was $153.80 a month made up of Social Security benefit payments and pension payments under a private company pension plan.

At the time the application was made it was classified by the Bennington office as an application for medical assistance and Mr. Gilbar's eligibility was determined under Family Services Policy Manual Regulations §§ 2400–2499. The recipient's application for medical assistance was granted, and payments were made by the Department to the nursing home for the excess of the cost of maintaining Mr. Gilbar in the home over his net income. The recipient's net income is his gross income reduced, pursuant to Department regulations, by his maintenance need.

Sometime in the late August or early September, 1969, after Mr. Gilbar had entered the nursing home, and after he had applied to the Department for medical assistance and had qualified for such assistance, Mr. Gilbar informed his granddaughter, Beverly Willette of Bennington, that he wanted her to move into his home with her family, and to make the repairs, alterations, improvements and enlargements necessary to make his home habitable for her and her family, as well as himself, so that he could return to his home and be taken care of there by his granddaughter and her family. Mr. Gilbar told Mrs. Willette that if she would do what he wanted, he would deed the property to her and her husband subject to his life's interest in the property. Mrs. Willette and her family moved into the home in September, 1969.

Shortly thereafter Mr. Gilbar told his granddaughter to retain a local lawyer to prepare the required deed to transfer title to the property to his granddaughter and her husband. The granddaughter retained a lawyer who inquired at the local office of the Department of Social Welfare if there was any reason why, under the welfare laws, the recipient could not, or should not, deed his property to his granddaughter and her husband. This request for information was made in the middle of October, 1969.

The lawyer was informed by the Department that if Mr. Gilbar transferred the property as planned, he would lose his right to future welfare benefits. In addition, the lawyer was informed that the recipient would be requested either to allow a lien to attach to his property or to place it on the market for sale, and failure to pursue one of these two courses

of action would also cause him to lose his rights to future benefits. The statement to the recipient's lawyer was based upon a change in policy of the Department. The policy change was effective only for benefits paid on and after October 15, 1969. The substance of this policy change is set forth in Social Welfare Bulletin No. 69-127, dated October 15, 1969. The statement of the Department to the lawyer representing the recipient and his granddaughter, was the first notice to either of them of the policy change.

Since moving into the property, the granddaughter and her husband have tried but have been unable to borrow money or to obtain credit for the purpose of making the necessary repairs to the property. This inability has been a consequence of the lien on the property asserted by the State of Vermont through the Welfare Department.

All payments made by the Department of Social Welfare on behalf of the recipient toward maintaining him in the nursing home have been paid pursuant to the provisions of Title XVI of the Federal Social Security Act and 33 V.S.A. Chapter 30. These payments amounted to $1,542.56 and secured by a lien on the property in question for benefits paid after October 15, 1969.

Mr. Gilbar, through his attorney, requested the Commissioner, Department of Social Welfare to discharge the lien under the provisions of 33 V.S.A. § 2655(d), "whenever there is good cause therefor". By letter dated November 24, 1969, the Commissioner declined to grant this request.

On December 5, 1969, Mr. Gilbar appealed to the Board of Social Welfare from the decision of the Commissioner holding that effective as of the 15th day of October, 1969, welfare benefit payments made on Mr. Gilbar's behalf to the Montoe Park Nursing Home, will be secured by a lien on real property owned by him and located on North Bennington Road, Bennington, Vermont. Appellant therein requested a fair hearing before the Board. The facts prior to the request by the appellant to discharge the lien, are found in a stipulation of facts agreed upon by the parties as a basis for review by the Board of Social Welfare. These facts are substantially set forth in this opinion.

The Board of Social Welfare by its judgment order dated May 26, 1970, held and determined that "the decision of the

commissioner refusing to discharge the department's lien upon real estate owned or formerly owned by Lester Gilbar is affirmed." Prior to his death the recipient appealed to this Court for review.

At the outset, the State-appellee, contends that this Court lacks jurisdiction to entertain this appeal. Prior to the 1969 adjourned session of the legislature the welfare law permitted to an appeal to this Court under the provisions of 33 V.S.A. § 2571. This right to appeal under this section was repealed by No. 256 of the Acts of 1969 on April 6, 1970. See amended 33 V.S.A. § 2571, *supra*.

At the time of the above enactment, the Administrative Procedure Act, 3 V.S.A., Chapter 25 was already in effect and had been since July 1, 1969. 3 V.S.A. § 815(a) thereof and related 3 V.S.A. § 801 authorizes a judicial review by this Court of the case here considered. To summarize, when the new welfare law went into effect there was appellate coverage as to decisions of the Social Welfare Department under the Administrative Procedure statute. 3 V.S.A. § 815(a).

Appellee also urges that the administratrix is without authority to prosecute this appeal in that there is nothing for her, as such, to "recover and protect" for the benefit of the estate. 14 V.S.A. § 1401.

Here, we have an asserted lien by the State on the property. Its validity is challenged by the administratrix. The estate of the decedent Gilbar stands to be enlarged or diminished by the outcome of the case. In this posture, the plaintiff, as representative of the decedent, has standing to prosecute this appeal within our holding in *Re Estate of Gaskell*, 123 Vt. 57, 58, 181 A.2d 67 (1962).

We are concerned with 33 V.S.A. § 2655 which reads:
> "(a) The amount paid as aid to a recipient under this chapter, and the payments made under section 2657 of this title, shall constitute a lien on the property of the recipient.
>
> (b) Upon granting aid under this chapter, the commissioner shall send a notice of the lien to Town Clerk of the town in which the property of the recipient is located.

The clerk shall record the notice in the land records and chattel records of the town. The department shall pay the statutory fees provided for the recording.

(c) The lien shall not be enforced until the death of the recipient, if he continues to reside on the property, or against any real estate of the recipient while it is occupied as a home by the recipient's surviving spouse as long as the spouse remains unmarried.

(d) The lien may be foreclosed in the manner provided for foreclosure of real estate mortgages. This remedy shall not be exclusive, but shall be cumulative to the remedies otherwise available. The commissioner may discharge the lien upon payment of the amount due, or whenever there is good cause therefor. Of the amount realized from the lien, an amount equivalent to the pro rata share to which the United States of America is equitably entitled shall be paid forthwith to its designated agency."

This appeal presents two questions, namely:

"I  Did the Commissioner of Social Welfare abuse his discretion in failing to discharge the Old Age Assistance lien encumbering the real property of the appellant?

III  Did the Board of Social Welfare, in reviewing the decision of the Commissioner of Social Welfare for which a Fair Hearing was requested, exercise the scope of review required by the applicable Federal and State Statutes and the rules and regulations thereunder?"

Appellant first contends that the Commissioner of Social Welfare abused his discretion in failing to discharge the lien which encumbered the real property of Mr. Gilbar. Under provisions of 33 V.S.A. § 2655(c), the Legislature has determined that "The lien shall not be enforced until the death of the recipient, if he continues to reside on the property, or against any real estate of the recipient while it is occupied as a home by the recipient's surviving spouse as long as the spouse remains unmarried."

The status of the State's claim or lien against the real property of Mr. Gilbar is fixed by the express term of the statute 33 V.S.A. § 2655. Under this statute amounts paid as aid to aged, blind or disabled recipients constitutes a lien on

recipient's property. Since January 1, 1969, such payments for the maintenance of persons in intermediate care homes have also been in this category of welfare benefits.

The State did not enforce the lien with respect to such payments until October 15, 1969, and then only for benefits paid on and after that date. Appellant contends that between January 1, 1969 and October 15, 1969 Mr. Gilbar promised to deed his property to his granddaughter. The Willette family moved into the decedent's home during September, 1969. By moving into the property and taking responsibility for its care and upkeep, Mrs. Willette claims that she partially performed her obligations under the contract—at least performed all the obligations that she was able to so do, in that the State did not discharge its lien.

Mrs. Willette contends that equitable title to the Gilbar property vested in her prior to the State's assertion of its lien and that the grandfather became legally obligated to deliver a deed to her of the property in question.

There appears to have been relatively few cases dealing with priorities of interest between a governmental agency asserting an interest against real property by virtue of an old age assistance lien, and parties other than the lienee claiming a right or interest in the same property. Annot., 29 A.L.R.2d 731 (1953).

The provisions of the Federal Social Security Act as to grants to the states for old-age assistance leave the matter of reimbursement to the individual states. *County Dept. of Public Welfare* v. *Potthoff,* 220 Ind. 574, 44 N.E.2d 494 (1942); *Worcester* v. *Quinn,* 304 Mass. 276, 23 N.E.2d 463, 125 A.L.R. 707 (1939).

Finally, as an alternative, it is not appellant's contention that the State should have discharged the lien unconditionally. It is suggested that the estate of the deceased should execute and deliver to Mrs. Willette a deed conveying the property to her absolutely, and that upon the discharge of the lien full title to the property, both legal and equitable, would then become vested in her. With such title she concedes that there is no reason why the lien should not prevail as to financial assistance rendered Mr. Gilbar on and after October 15, 1969.

Within the general rule, 33 V.S.A. § 2655 (d) *supra,* there is allowed an exception for cases, where in the Commissioner's

judgment, there is "good cause" for discharging the lien. In this case neither the recipient or his spouse are living.

33 V.S.A., Chapter 30 is entitled "Aid to the Aged, Blind and Disabled." The granddaughter, Mrs. Willette, is neither aged, blind nor disabled. Therefore, her equitable claims to the property are not for the Commissioner's consideration. If 33 V.S.A. § 2655 is to be construed to empower the Commissioner to discharge liens for the benefit of any third person he deems deserving, for any reason that appeals to him, such a statute could not be justified by law. *Gross* v. *Gates, Auditor of Accounts,* 109 Vt. 156, 160, 194 A. 465 (1937).

█ The narrow question before us is whether the facts, as stipulated by the parties, require the Commissioner to discharge the lien as a matter of law. Although the Commissioner is authorized, under the provisions of 33 V.S.A. § 2655(d), to discharge such a lien for "good cause", from his point of view its dimensions are measured by statutory authority. They do not include the adjudication of general equitable claims. The statute confers no authority in the Commissioner to grant equitable relief, either by way of quieting title or compelling specific performance of an oral contract. See *Trybulski* v. *Bellows Falls Hydro-Electric Corporation,* 112 Vt. 1, 10, 20 A.2d 117 (1941).

The issue in this case is not the right to foreclose, but the right to impose a lien, or release it. The fact that the lien remains does not mean that the Commissioner is entitled to foreclose it under the provisions of 33 V.S.A. § 2655(d). Appellant's equitable claims must await the attention of a court empowered to deal with such claims, perhaps, appropriately, at the time foreclosure is sought.

The general review and appeal statute, 33 V.S.A. § 2571, empowers the Board of Social Welfare to review the Commissioner's decisions. Following such review, the board by its order ". . . shall affirm, modify, or reverse the prior decision. . . . The board shall give written notice of the decision to the person applying for fair hearing."

█ The appellant urges that the Board of Social Welfare erroneously limited its scope of review in reviewing the decision of the Commissioner. By its judgment order of May 26,

1970, the Board in part held that the "Commissioner was acting within the scope of his legal authority in refusing to discharge the department's lien in this case." Appellant interprets the foregoing quotation as a holding by the Board that there was no abuse of discretion on the part of the Commissioner in refusing to discharge the lien.

Appellant claims that this limitation of the scope of the review was contrary to the applicable regulations governing the nature of the review to be exercised by the Board in appeals by welfare recipients from decisions of the Commissioner. To this end she quotes a regulation which provides that the Board's obligation is to review appellee's

> ". . . interpretation of the law *and* the reasonableness of the policies promulgated under the law as the complainant is aggrieved by the application to his situation." (Emphasis added.) Department of Social Welfare, General Manual, § 1623.2(2).

The appellant argues that she was entitled to a *de novo* hearing by the board. There is nothing in the record to indicate that she received anything less. The Fair Hearing was conducted on facts stipulated by the parties. A hearing *de novo* and a hearing on agreed facts are mutually exclusive. There is nothing in the record which indicates that the Board of Social Welfare misapprehended the proper scope of its review, nor does it appear that the refusal to discharge the lien constituted an abuse of discretion or a violation of law, either on the part of the Commissioner or the Board.

*Judgment order of the Board of Social Welfare is affirmed.*