HERMAN A. SCHMUTTE ET AL., APPELLEES, V. STATE OF NEBRASKA, APPELLANT.

22 N. W. 2d 691

FILED APRIL 26, 1946. No. 32028.

*Walter R. Johnson, Attorney General, Edwin Vail, Carl H. Peterson,* and *H. Emerson Kokjer,* for appellant.

*Lloyd E. Chapman,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

Plaintiffs recovered a judgment against the defendant for damages caused by floodwaters which were unable to escape through culverts in a state highway, and which were checked and backed up on their land. Defendant appeals. We affirm the judgment of the trial court.

Plaintiffs own an 85-acre, rectangular tract of land, lying lengthwise along the west side of State Highway 77 in Lancaster County. The land is divided into two valleys with two natural drainways or creeks running through it, sloping generally to the east. The north creek drains an area fixed by plaintiffs' witness at 147 acres and by defend-

ant's witness at 132.7 acres. The south creek drains an area fixed by plaintiffs' witness at 179 acres and by defendant's witness at 185 acres, and on an earlier calculation at 238 acres. Plaintiffs' improvements are situated to the north of the south creek bed. These creeks carry little, if any, water during dry periods, but serve as natural run-off areas following rains and melting snow.

It does not appear when or under what conditions the highway was established along the east side of plaintiffs' land, nor what rights the state acquired or had therein. It became a part of the state highway by legislative act in 1919. Laws 1919, ch. 190, t. VII, art. 2, § 1, p. 803. About that time it appears to have been a dirt road following the normal levels of the land with culverts at the points where each of the creeks crosses the highway. It next was a graveled highway. Beginning in 1930, the defendant improved and paved the highway. The work was completed in 1932. As a part of the improvement the state raised the elevation of the road seven feet at the north creek bed and four to five feet at the south creek bed. These changes in elevation were made to improve the use and safety of the highway.

A culvert six feet by four feet and the length of the grade's width was placed in the highway embankment at the north creek bed. The intake was placed above the normal level of the land to give a drop for flowage. The land to the east of this culvert was low and it was not necessary to construct an outlet. A culvert eight feet by four feet and the length of the grade's width was placed in the highway embankment at the south creek. There the creek had a natural and defined bed to the east for some 400 feet, where it emptied into another creek.

Defendant's engineer, who designed these culverts, testified that their attempt was to design culverts so that they would handle a "normal rainfall," just filling the inlet of the box. As a basis they took into consideration their knowledge of rains for a ten-year period prior to the construction. They likewise considered the topography of the

drainage area, the water-absorbing qualities of the soil and other elements. It was not demonstrated, these elements being considered, that the culverts were adequate to carry off the anticipated waters.

The defendant as a part of its construction built a new drainway to establish an outlet for the waters coming through the south culvert, and straightened and filled in the one that nature provided. Thereafter during the dry years between 1930 and 1940, this artificial drainway to the east of the highway filled with dirt and debris, so that the tenant on the land was able to farm across it in places.

Plaintiffs' engineer testified that it was necessary that the drainage ditch east of the south culvert be kept open to provide a waterway equal to that of the culvert to carry off the water flowing through that culvert, and likewise that the culvert at the north drainway should have been larger in size.

On May 10, 1942, a heavy rainfall occurred in a large area of which plaintiffs' land was a part. It is estimated that a total of eight inches fell in some places, causing serious flood conditions in several localities. On plaintiffs' land the rain fell throughout the night, with the heaviest downpour during the early hours. Rain waters came down these two drainways on plaintiffs' land. The water coming down the north drainway was of such volume that it could not flow at once through the culvert, was backed up by the highway embankment and flooded 4.6 acres of plaintiffs' land, damaging both crops and land. The water coming down the south drainway was of such volume that it was unable to flow at once through the culvert and the filled-in drainway to the east, and it likewise was backed up by the highway embankment and flooded plaintiffs' lands and part of their improvements to the damage of lands, improvements, and personal property. Figures on the exhibits indicate that the waters may have run across the pavement at this point.

There is no evidence directly as to the total amount of rainfall in this storm or its intensity at any one time in

the drainage area that crosses and is on plaintiffs' lands. Plaintiff offered the evidence of long-time residents of the immediate locality, who testified that there had been rainfalls of equal intensity in that area prior thereto, particularly one in 1922 when over four inches fell in one hour. Defendant offered evidence of others further removed from the land involved, who testified that they had never known of a rainfall of equal intensity.

The evidence is that prior to the elevation of the grades and construction of the paved highway the waters coming down these drainways in time of heavy rains flowed across the highway and off without doing material damage. Evidence also went to the jury that a similar rain came in 1943, although not of equal volume, and the waters reached the embankment at one time and then backed up on plaintiffs' land. Thereafter the defendant cleaned out and reopened the drain to the east of the highway connecting with the south culvert.

Plaintiffs alleged that the culverts were too small to carry away the surplus waters and that defendant failed and neglected to keep open the drainage ditches to the east of the culverts and thus caused the damage.

Defendant by answer alleged, among other things, that the rainfall was unprecedented in volume and intensity, and that the flooding of plaintiffs' premises was due to natural conditions, and was without contribution thereto by any act of this defendant or influence on said water by defendant's grades, embankments, highway, or culverts.

Defendant presents first the proposition that the trial court was without jurisdiction to try this action against the state, it being a tort action and it not being shown that legislative permission to sue had been obtained. Defendant relies upon the constitutional provision that: "The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suits shall be brought." Constitution, art. V, § 22. Plaintiffs base their action upon the provisions of section 21, article I, of the Constitution which provides: "The property of no person

shall be taken or damaged for public use without just compensation therefor." This assignment goes to plaintiffs' cause in its entirety and the question then is whether or not plaintiffs are entitled to maintain any essential part of their cause against the state under the provisions of section 21, article I, of the Constitution.

It is well established that legislative enactment is not necessary to give effect to section 21, article I, of the Constitution. It is a self-executing provision. Nine Mile Irrigation District v. State, 118 Neb. 522, 225 N. W. 679; Bordy v. State, 142 Neb. 714, 7 N. W. 2d 632. It prohibits the state from damaging property for public use without compensation. It protects property rights from invasion by the state as well as the subdivisions of the state and corporations. Nine Mile Irrigation District v. State, supra. Likewise, it is established that, in the absence of a statute granting the right, damages cannot be recovered against the state for negligence of any of its officers, agents, or employees. Shear v. State, 117 Neb. 865, 223 N. W. 130. However, the fact that the state is not liable for the negligence of its officers, agents, and employees does not excuse it from liability for the taking or damaging of property which was or could have been done under its powers of eminent domain. Nine Mile Irrigation District v. State, supra; Gledhill v. State, 123 Neb. 726, 243 N. W. 909; Psota v. Sherman County, 124 Neb. 154, 245 N. W. 405; Snyder v. Platte Valley Public Power and Irrigation District, 144 Neb. 308, 13 N. W. 2d 160. It likewise is settled that one whose property is damaged without actual taking is entitled to just compensation. Gledhill v. State, supra.

When the public acquires either title to or a permanent easement in a strip of land for a highway, it is presumed that the landowner either received full compensation or waived the right thereto at the time the right was acquired. This presumption applies to compensation for the land taken and to consequential damages to lands not taken arising from a subsequent proper construction of the highway, which must have been within the contemplation of the

parties at the time the public acquired the right. Psota v. Sherman County, *supra.* See, also, Snyder v. Platte Valley Public Power and Irrigation District, 140 Neb. 897, 2 N. W. 2d 327. A landowner who seeks compensation under the constitutional provision for damages arising as a result of construction of a highway subsequent to the original taking, and who shows that the construction causing the damage was not proper, has stated a cause of action entitling him to maintain an action against the state. Psota v. Sherman County, *supra;* Gledhill v. State, *supra.*

In this class of cases the parties are held to have known the nature of the proposed improvement at the time of the original taking or damaging, and to have contemplated that subsequent construction would be done in a proper manner. Compensation is deemed to have been paid, waived, or adjudicated on that basis. When it appears that the improvement was subsequently constructed in an improper manner and damages arise therefrom, an additional element of damage is presented. The liability for this subsequent damage rests upon the original taking or damaging for a public use. Recovery is permitted because that new element was not contemplated nor determined at the time of the original taking or damaging.

In Gledhill v. State, *supra,* we quoted with approval the following statement: "Failure to make proper provision for the flow of water under a bridge or culvert has been held to impose liability, although such bridge or culvert may be constructed according to approved principles of engineering; the fact that it does materially obstruct the flow being held to be in itself evidence that it was not properly constructed, regardless of the principles upon which it was built."

Defendant initially, throughout the case, and here, directs its objection to the right of the plaintiffs to recover any of the damages suffered. Clearly plaintiffs stated a cause of action for the damages suffered as a result of the construction of the culverts. By proof they sustained that issue.

By its objection in the trial court defendant did not present the separable question of the right of the plaintiffs to recover for such damages, if any, as may have arisen from the failure of the defendant to keep open the drainway east of the highway. Accordingly, that question is not determined here.

The objection of the defendant to the jurisdiction of the court is without merit.

Defendant next contends that this flood was extraordinary, unprecedented, and not reasonably to be foreseen, and constituted an act of God as a matter of law, relieving the defendant of liability. The trial court submitted that question to the jury. The defendant does not point out any error in the instructions submitting that issue. The evidence on this question has been recited. We think it was a question for the jury and see no merit in this assignment.

Finally, defendant contends that whether compensation is assessed in condemnation proceedings or in an action for damages, where condemnation has not been had, the right of action accrues at the time of the completion of the construction of the public works, and hence this action is barred by the statute of limitations. We have doubts as to whether that question has been preserved so as to be presentable here, but waiving that, there is no merit in the assignment. We have held that the right to damages for an obstruction of a stream by an insufficient culvert or drain does not accrue when the structure is built, but when the overflow actually results. Chicago, R. I. & P. R. Co. v. Andreesen, 62 Neb. 456, 87 N. W. 167. The principle of this rule has been followed many times and applied in a variety of circumstances. See 8 Neb. Digest, Limitation of Actions, Key No. 55(7), p. 45. See, also, 37 C. J., Limitations of Actions, § 255, p. 891.

The judgment of the trial court is affirmed.

AFFIRMED.