### In re Application of Edward C. and Barbara C. Buttolph (Milton and Beatrice Barnes, appellants)

[527 A.2d 1147]

No. 84-561

Present: **Allen, C.J., Hill, Gibson and Hayes, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed February 13, 1987

*Lynch & Foley, P.C.*, Middlebury, for Appellees.

*James H. Ouimette*, Vergennes, for Appellants.

**Gibson, J.** Appellants Milton and Beatrice Barnes appeal a decision of the Addison Superior Court affirming a Vermont Water Resources Board (Board) order authorizing construction of a dam by appellees Edward and Barbara Buttolph in Middlebury, Vermont. We affirm.

This Court has twice previously reversed Board orders on procedural grounds following the issuance of permits authorizing construction of the Buttolph dam. See *In re Buttolph*, 141 Vt.

601, 451 A.2d 1129 (1982); *In re Buttolph*, 138 Vt. 573, 420 A.2d 859 (1980). While the second appeal was pending, appellees constructed the dam in 1982 pursuant to the Board's permit, and the dam has been in existence ever since.

The dam, an earthen-fill berm with a maximum height of nine feet, is capable of creating a temporary impoundment of 635,000 cubic feet at full pond, flowing an area of approximately four acres. The dam is designed to handle increased stream flows resulting from the diversion of surface water from a proposed 23-acre development into a small intermittent stream, and is able to moderate flows of storms and run-off events with a magnitude less than that of a ten-year-frequency storm. The land to be periodically flowed by the impoundment is low-lying swampy area. The flow of the stream is typically one-to-three feet in width and approximately three inches in depth. The diversion of surface water drainage from the 23-acre parcel will increase stream flow by approximately eight percent.

Appellants reside one-quarter of a mile downstream from the dam. They complain that the increased stream flow prevents the stream from drying up from time to time, as it once did, and they fear that, as a result, mosquitoes and black flies will proliferate and deprive them of the use and enjoyment of their back yard.

On appeal, appellants contend that the superior court erred in affirming the Board order on the grounds that (1) the diversion of surface water from its natural drainage course into a watercourse that would not naturally have drained it is a variance from the surface water drainage law of this state and cannot be in the public good, and (2) the Board failed to impose conditions sufficient to protect appellants from the adverse effects of the dam and the diversion of water.

The superior court ruled that appellants' remedy for any injury was by way of a civil action for damages or injunctive relief, citing *Swanson* v. *Bishop Farm, Inc.*, 140 Vt. 606, 443 A.2d 464 (1982), *overruled on other grounds* in *Soucy* v. *Soucy Motors, Inc.*, 143 Vt. 615, 619, 471 A.2d 224, 226 (1983), and *S.L. Garand Co.* v. *Everlasting Memorial Works, Inc.*, 128 Vt. 359, 264 A.2d 776 (1970). In their brief, appellees also urge this approach.

Both *Swanson* and *Garand* were civil actions in which the lower property owners sought damages or injunctive relief, or both, for an alleged wrongful diversion of water onto their property by the upper owners. No administrative agency was involved

in either case, however, and the role of such an agency was never at issue therein.

We agree that an administrative agency may not adjudicate private damage claims or provide general equitable relief; such matters are reserved to the courts. *Gloss* v. *Delaware & Hudson Railroad Co.*, 135 Vt. 419, 422, 378 A.2d 507, 509 (1977); *Willette* v. *Department of Social Welfare*, 129 Vt. 270, 277, 276 A.2d 608, 612 (1971); *Trybulski* v. *Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 8-9, 20 A.2d 117, 120-21 (1941). Appellants, however, do not seek monetary damages or injunctive relief. They contend that the Board should not have issued a permit in the first instance because the diversion of surface water from the 23-acre development through the dam onto their property is a violation of their common law rights and therefore cannot be in the public good. In support of their position, they cite *Swanson, supra, Scanlan* v. *Hopkins*, 128 Vt. 626, 270 A.2d 352 (1970), and *Kasuba* v. *Graves*, 109 Vt. 191, 194 A. 455 (1937).

In *Swanson*, this Court held that an upper property owner "cannot artificially increase the natural flow of water to a lower property owner or change its manner of flow by discharging it onto the lower land at a different place from its natural discharge." *Swanson*, 140 Vt. at 610, 443 A.2d at 466 (citing *Scanlan* v. *Hopkins*, 128 Vt. at 631, 270 A.2d at 356. Appellants contend that, under *Kasuba*, an upper owner may increase the flow only if absolutely and indispensably necessary for the beneficial use of the upper property and only if it can be done without substantial injury to the lower property. See *Kasuba*, 109 Vt. at 203, 194 A. at 460. *Swanson* notes, however, that "in cases involving only increased flowage and not a change in the place of discharge, an upper owner may increase the flow as long as it causes no injury to the lower property." *Swanson*, 140 Vt. at 610, 443 A.2d at 466 (citing *Kasuba*, 109 Vt. at 207, 194 A. at 462).

In this case, the upper owners, Edward and Barbara Buttolph, have increased the stream flow on appellants' property by approximately eight percent; they have not, however, changed the place where water is discharged onto appellants' property. Accordingly, unless there is injury to appellants' property, there would be no violation of their common law rights by the issuance of the permit by the Board.

Appellants contend that additional water flowing through their property will not drain efficiently, thus adding to their problems

with black flies and mosquitoes. The burden of proof is on appellants, as lower owners, to show that increased stream flow will result in injury to their property. *Swanson*, 140 Vt. at 610, 443 A.2d at 466.

The Board found there was insufficient evidence to show that either the dam or the increased stream flow associated with the diversion would significantly affect appellants' long-standing problem with mosquitoes and black flies. Appellant Milton Barnes testified to "a very heavy concentration of either black flies or mosquitoes" when the pools in the stream don't dry up; he also testified, however, that he and his wife had experienced problems with black flies in the 1930s and that they had had "about the same" trouble with them in the summer after the dam was built as in the previous year. The Board made findings regarding the effect the proposed project would have on the uses and values enumerated in 10 V.S.A. § 1086 and concluded that the public good would be served by the construction of the dam.

Findings of fact of an administrative agency will not be set aside unless they are clearly erroneous, and, where warranted by the evidence, they are binding on this Court. *In re Spear Street Associates*, 145 Vt. 496, 499, 494 A.2d 138, 140 (1985). Further, the weight of the evidence, the credibility of the witnesses, and the persuasiveness of the testimony is a matter for the trier of fact — in this case, the Board. *Gramatan Home Investors Corp.* v. *Starling*, 143 Vt. 527, 532, 470 A.2d 1157, 1160 (1983). The evidence before the Board supports its findings, which, accordingly, must be sustained.

As a condition to the granting of the permit by the Board, appellants requested that appellees be required to install a culvert to carry the stream water from U.S. Route 7 to a point beyond their property, a distance of several hundred feet. Since the Board found no injury to appellants' property, it was under no obligation to impose protective conditions relating to flowage below the dam.

*Affirmed.*