John C. TRAVIS and Joyce E. Travis, Husband and Wife, Plaintiffs and Appellees,

v.

Dennis MADDEN and Goldie Madden, Husband and Wife, and Terry Madden, Defendants and Appellants.

No. 17764.

Supreme Court of South Dakota.

Considered on Briefs on Oct. 5, 1992.

Decided Dec. 16, 1992.

Jack R. Von Wald, Selby, for plaintiffs and appellees.

A.N. Buckmeier of Bormann, Buckmeier, Bauer & Todd, Mobridge, for defendants and appellants.

AMUNDSON, Justice.

Dennis and Goldie Madden (Madden) appeal the circuit court's final judgment enjoining Madden from interfering with the use of a 58–foot easement area by John and Joyce Travis (Travis). We affirm in part and reverse in part.

## FACTS

In 1965, John and Joyce Travis purchased real estate from Michael and Ruth Madden, described as follows:

> The South 110 Feet of Lot Nineteen (19) of the Auditor's Plat of the lands adjacent to the Town of Mound City, Campbell County, South Dakota.

The Travis residence is on this location.

On October 3, 1990, Travis purchased additional real estate adjacent to the South 110 feet of Lot Nineteen from Clarence and Helen Fadness (Fadness). That real estate is described as follows:

> The West 248 Feet of Lot Eighteen (18), and the North 168 Feet of Lot Twenty-six (26), Auditor's Plat of the lands adjacent to the Town of Mound City, Campbell County, South Dakota, according to the recorded plat thereof.

The conveyance to Travis also included an easement pertaining to the above-described property. The easement, originally conveyed by Madden to Fadness on October 7, 1977, is described as follows:

> Grantors convey to the Grantees an easement over the North Fifty-eight Feet (N 58′) of Lot Nineteen (19), Auditor's Plat of the land adjacent to the Town of Mound City, South Dakota, for ingress and egress to the above described property, *over and upon the roadway presently existing* and situated on the North 58 feet of said Lot 19. (Emphasis added.)

Madden owns the property, including the property on which the easement exists, immediately to the north of the property owned by Travis. Madden's property is described as:

> Lot Eighteen (18), except the West 248 Feet (W 248′) thereof, Auditor's Plat to the Town of Mound City, South Dakota; and the North 58 Feet (N 58′) of Lot Nineteen (19), Auditor's Plat to the Town of Mound City, South Dakota.

This property was originally owned by Dennis Madden's parents, Michael and Ruth Madden. Dennis assumed ownership after Michael's death in 1984. Dennis' son Terry has resided on the property since that time.

The easement across the Madden property includes a gravel roadway along the property's southern border. This roadway goes past a garage owned by Madden and continues west to a pole shed owned by Travis on the West 248 Feet of Lot Eighteen (18). John Travis uses the easement to move machinery and equipment to and from the pole shed.

Travis also owns a shed just south of the property line between his property and Madden's property. This property line was

fenced by John Travis in 1966 from the west end up to approximately sixteen feet from the shed. Since that time, John Travis has used the sixteen-foot-gate area to gain access to his backyard from the easement area.

In the spring of 1990, Terry Madden fenced in the gate to the west of Travis' tool shed with woven wire and planted elm trees in the easement area just north of the property line, thereby prohibiting Travis from crossing onto the easement area. In addition, Terry Madden obstructed the roadway by parking buses and other vehicles on the 58–foot area of Lot 19 and placed mink cages and other property along the west end of the easement area, blocking passage to the pole building.

On December 6, 1990, Travis filed a complaint asking the court to issue a permanent injunction restraining Madden from interfering with Travis' use of the easement. Travis contended that the easement area is the entire fifty-eight feet described in the grant; Madden argued that the easement is only over the existing roadway. The court found the easement to be over the entire fifty-eight feet and issued the injunction prohibiting interference by Madden. Specifically, Madden was required to remove the fence placed across Travis' gate, remove trees planted in the easement area, and remove mink cages and other personal property obstructing use of the easement. The court further found that Terry Madden's interference with the easement was vindictive, obnoxious, and destroyed a close neighborly relationship. Madden appeals, alleging that the easement is limited to the existing roadway over the 58–foot area.

## ISSUES

1) Whether the trial court erred in finding that the easement granted was 58 feet wide?

2) Whether the trial court erred in granting Travis a prescriptive easement?

## ANALYSIS

At issue in this case is the extent or width of Travis' easement and the locations from which the easement may be entered. Travis contends his easement is the entire fifty-eight feet described in the grant, while Madden contends the easement is only the roadway that existed at the time of the grant of the easement and described therein. Further, Travis alleges that his rights to the easement, including ingress to and egress from his backyard, have arisen by prescription as well as by grant. We will first address the express terms of the grant as to the determination of the extent of the easement.

### 1. Width of the granted easement

■ The extent of an easement is determined by the terms of the grant or by the nature of the enjoyment by which it was acquired. SDCL 43–13–5. " '... The terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee.' " *Salmon v. Bradshaw*, 84 S.D. 500, 505–06, 173 N.W.2d 281, 284 (1969) (quoting *Witman v. Stichter*, 299 Pa. 484, 149 A. 725, 727 (1930)).

■ The terms of this grant seem somewhat inconsistent. The grant initially states that the easement is "over the North Fifty-eight Feet (N 58')" of Lot 19. However, any inconsistency is cured by the language restricting the easement "for ingress and egress to the above described property, *over and upon the roadway presently existing* and situated on the North 58 feet of said Lot 19." (Emphasis added.) We find that the language specifically stating that the use of the easement shall be "over and upon the roadway presently existing" indicates that the easement is limited to the use of the roadway and not the entire fifty-eight feet of land. The "North Fifty-eight Feet of Lot 19" merely describes the parcel of land on which the easement is located and not the easement itself.

"Ordinarily a grant or reservation of a right of way by instrument referring to an existing way at the place contemplated, and not otherwise indicating the width of the

passage, operates to limit the width to that of the existing way...." W.W. Allen, Annotation, *Width of Way Created by Express Grant, Reservation, or Exception Not Specifying Width*, 28 A.L.R.2d 253, 267 (1953). *See Wilson v. De Genaro*, 36 Conn.Sup. 200, 415 A.2d 1334 (1979), *aff'd*, 181 Conn. 480, 435 A.2d 1021 (1980) (reference to existing roadway without reference to width of passage limited easement to width of existing way); *Cox v. Glenbrook Co.*, 78 Nev. 254, 371 P.2d 647 (1962) (right-of-way granted over grantor's roads as "now located" could not widen easement beyond width at time of grant).

This court agrees that the reference to the existing roadway in the grant serves to limit the easement to that part of the north fifty-eight feet of Lot 19 that was the existing roadway at the time of the grant. The language of the grant referring to the north fifty-eight feet is merely the legal description of the part of Lot 19 on which the easement (roadway) is located. Because the grantors of the easement owned only the north fifty-eight feet of Lot 19, it was necessary to describe that portion of Lot 19 which they owned and on which they could grant the easement.

We therefore conclude that the grant to Travis conveyed an easement only over the existing roadway and not over the entire northern fifty-eight feet of Lot 19. However, while we reverse the trial court's finding as to the width of the easement, we nonetheless agree with the trial court that Madden may not interfere with Travis' use of the easement. Terry Madden may not obstruct or interfere with the use of the easement in the manner described above. The roadway must remain unobstructed for the passage of vehicles and equipment.

## 2. Prescriptive Easement

Travis also contends that he has a right to the use of the north fifty-eight feet of Lot 19 by prescription. John Travis used the easement area from 1965 to 1990 to gain access to his backyard. During this time, he accessed his backyard from the easement through the sixteen-foot gate behind his shed. It is this use of the easement that trial court found to be prescriptive.

■ An easement need not be conveyed in a grant; it may also arise by prescription. To claim the benefit of an easement by prescription, a person must show open, continued, and unmolested use of the land in the possession of another for the statutory period. *Kougl v. Curry*, 73 S.D. 427, 432, 44 N.W.2d 114, 117 (1950). The statutory period for prescriptive easements, like that for adverse possession, is twenty years. SDCL 15–3–1. Travis has fulfilled these requirements by his continued use of the easement to gain access to his backyard for twenty-five years.

■ However, the use of the property must also be hostile and adverse to the interests of the owner. *Miller v. County of Davison*, 452 N.W.2d 119, 121 (S.D. 1990); *First Church of Christ Scientist v. Revell*, 68 S.D. 377, 382, 2 N.W.2d 674, 677 (1942). Continued use which is permissive is insufficient to fulfill the requirement of adverse and hostile use. *First Church* at 382, 2 N.W.2d at 676–77. In the case at bar, John Travis was impaled by his own testimony that his use of the easement was permissive from 1965 until the time his gate was fenced by Terry Madden in 1990. Thus, while John Travis' use of the easement area was open and continuous for the statutory period, it cannot be said to be adverse and hostile. Therefore, with no proof in the record of this essential element nor any finding of such by the trial court, no prescriptive easement exists for passage into Travis' backyard from the easement area.*

■ While we reverse the trial court's findings as to the prescriptive easement and the extent of the granted easement, we

---

* Travis' property is not landlocked and he is not precluded from access to his backyard without use of the easement. Travis may access his backyard by use of his own driveway, from the south side of his house, or by entering from his property which is accessed by the easement (portions of Lots 18 and 26).

affirm the injunction restraining Madden from interfering with Travis' use of the easement. Although we have reduced the extent of the easement as found by the trial court, we still find that Madden interfered with the easement granted.

We affirm the trial court's granting of the injunction ordering Madden to refrain from interfering with Travis' use of the existing roadway, and we reverse the trial court's holding as to the existence of a prescriptive easement.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.