1997 SD 109

**Arthur STEINER, Thomas L. Steiner, Donna Allen and James Pitzl Plaintiffs and Appellees,**

v.

**COUNTY OF MARSHALL, A Political Subdivision of the State of South Dakota, and the Board of County Commissioners of said County, MARION CUSICK, MAURICE ERICKSON, SHERMAN HALVERSON, LARRY JASPERS and LELA OLSON, Defendants and Appellees,**

and

**Marshall–Brown Crow Creek Landowners Assn., Inc., Intervenor and Appellant.**

**No. 19854.**

Supreme Court of South Dakota.

Argued June 3, 1997.

Decided Aug. 27, 1997.

Drew C. Johnson of Fritz, Hogan & Johnson, Aberdeen, for Plaintiffs and Appellees.

John Simko of Woods, Fuller, Shultz & Smith, Sioux Falls, for Defendants and Appellees.

Danny R. Smeins, Britton, for Intervenor and Appellant.

AMUNDSON, Justice.

[¶ 1.] Arthur Steiner, Thomas Steiner, Donna Allen, and James Pitzl (Landowners) sued Marshall County (County), seeking to enjoin County from obstructing the flow of water through County Highway 5 (Fort Road). Marshall–Brown Crow Creek Landowners Association, Inc. (Intervenor) filed a motion to intervene which was granted. Landowners and County eventually entered into a consent judgment which was approved by the trial court. The trial court dismissed the claims and defenses of Intervenor. Intervenor appeals and we affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] The land and water involved in this dispute are located in eastern Marshall County, and a portion of western Roberts

County, South Dakota. The land includes property owned by Landowners, which is upstream, as well as property owned by Intervenor, which is downstream. All of this property is located near Cattail Lake, which is one of nine lakes in a chain referred to as the Glacial Lakes. This chain includes the following lakes, listed in succession consistent with the water flow: Lake Martha, North and South Buffalo Lakes, North and South Red Iron Lakes, Clear Lake, Roy Lake, Lost Lake, and Cattail Lake. Cattail Lake, however, generally remained dry until 1994 when unusual precipitation starting in 1993 caused the lake to fill. As a result of the unusual precipitation, flooding of private property located near Cattail Lake, on the east side of Fort Road (upstream), occurred in 1995.

[¶ 3.] The road involved in this dispute, Fort Road, is a north-south county road which was built around 1934 across the west end of Cattail Lake. In other words, the upstream side of the lake is the east side of Fort Road, and the downstream side of the lake is the west side of Cattail Lake. The road was originally built with a grade of approximately nine feet above the floor of the lake bed, and it contained a seventy-two-inch drainage structure. In 1961, Fort Road was raised another eight feet. At the same time, a seventy-two-inch culvert was replaced with a thirty-six-inch culvert.

[¶ 4.] In the fall of 1995, water rose over twenty feet and reached the east side of Fort Road. In other words, Fort Road was acting as a dam. The thirty-six inch culvert located at the natural outlet to Cattail Lake failed to keep up with the rising tide, trapping more water on the east side of Fort Road. As a result, private property, including the property owned by Landowners, was flooded in July of 1995.

[¶ 5.] On May 9, 1996, Landowners filed a complaint against County, seeking an injunction to restrain County from obstructing the flow of water through Fort Road. They claimed around 3,000 acres of their farm land were flooded. On May 14, 1996, Intervenor filed a motion to intervene as its downstream land located on the west side of Fort Road was threatened. Over County and Landown-

ers' objections, the trial court granted Intervenor's motion. Intervenor then filed an answer and cross claim.

[¶ 6.] The first hearing was held on Landowners' request for a preliminary injunction on May 16, 1996. On May 31, 1996, the trial court entered findings of fact and conclusions of law on the injunction issue. On August 22, 1996, a trial to the court was scheduled on Landowners' amended complaint and Intervenor's cross claim.[1] On this day, Landowners and County agreed to a consent judgment which was presented to the trial court for approval. Over Intervenor's objections to the consent judgment, the trial court approved the judgment. In addition, the trial court dismissed the claims and defenses of Intervenor against Landowners and County on the ground that it failed to state a claim upon which relief could be granted. The trial court also awarded summary judgment to Landowners and County, stating any possible prescriptive easement rights had not yet ripened. Intervenor appeals, raising the following issues:

I.   Whether the consent judgment may be approved by the trial court without consent from Intervenor.

II.  Whether Intervenor has prescriptive rights precluding additional drainage by Landowners.

III. Whether the trial court erred in dismissing Intervenor's defenses and claims as a matter of law.

## DECISION

### [¶ 7.] I. Consent Judgment

■ [¶ 8.] Intervenor contends the trial court erred in approving the consent judgment entered into between Landowners and County, because it was not agreed to by Intervenor. Such a determination is reviewed applying an abuse of discretion standard. *See Kirkland v. New York St. Dep't of Correctional Servs.*, 711 F.2d 1117, 1128 (2nd Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984).

1. Intervenor also refiled its answer and cross    claim on August 22, 1996.

[¶ 9.] The consent judgment provides the agreement that Landowners release County from any liability and, in return, County install another sixty-inch culvert on Fort Road where it crosses Cattail Lake as well as monitor the levels of water flow through the culverts. The agreement also includes the following: "This Consent Judgment is only for the benefit of [Landowners]. This Consent Judgment does not create rights for the benefit of any individuals or entities other than [Landowners]; nor does this Consent Judgment create any obligation to any individuals or entities other than [Landowners]."

[¶ 10.] In *Local Number 93 v. City of Cleveland,* the United States Supreme Court was confronted with a consent judgment to which an intervenor objected. 478 U.S. 501, 528–30, 106 S.Ct. 3063, 3078–79, 92 L.Ed.2d 405, 427–28 (1986). The consent judgment was submitted to the district court for approval by the firefighters (the plaintiffs) and the city of Cleveland (the defendant). The intervenor, a labor union, contested the approval of the consent judgment. *Id.* at 512, 106 S.Ct. at 3070, 92 L.Ed.2d at 417. After hearing objections from all parties, the district court approved the judgment.

[¶ 11.] On appeal, the intervenor argued "its consent was required before the court could approve a consent decree[,]" because the intervenor "was permitted to intervene as of right." *Id.* at 528, 106 S.Ct. at 3078–79, 92 L.Ed.2d at 427. The Court responded by stating:

> A consent decree is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating. It has never been supposed that one party—whether an original party, a party that was joined later, or an *intervenor*—could preclude other parties from settling their own disputes and thereby withdrawing from litigation. Thus, while an intervenor is entitled to present evidence and have its objection heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.

*Id.* at 528–29, 106 S.Ct. at 3079, 92 L.Ed.2d at 427–28 (emphasis added) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 400, 102 S.Ct. 1127, 1131, 1136, 71 L.Ed.2d 234 (1982); *Kirkland,* 711 F.2d at 1126).

[¶ 12.] Similar to *Local Number 93,* the Intervenor in this case participated in the consent judgment hearing and was permitted to submit its objections to the decree.[2] After considering these objections, the trial court approved the consent judgment.

[¶ 13.] *Local Number 93* provides a consent judgment cannot "impose duties or obligations on a third party, without that party's agreement." *Id.* at 529, 106 S.Ct. at 3079, 92 L.Ed.2d at 428. In other words, the consent judgment must not prevent Intervenor from litigating any possible legitimate claims. The language of the agreement in this case is clearly consistent with this notion, as it provides that no obligations to any parties other than Landowners and County are created by the judgment.[3] In addition to no obligations, Intervenor is not bound to anything under the agreement. In fact, all of Intervenor's claims differ from the issues addressed in the consent judgment. Intervenor's claim that it possesses a prescriptive easement is not even mentioned in the consent judgment.

[¶ 14.] Based on these facts, the trial court did not abuse its discretion in approving the

---

2. *The intervenor in Local Number 93 was included in the negotiations of the consent judgment. Id.* at 508, 106 S.Ct. at 3068, 92 L.Ed.2d at 414. However, in *Local Number 93,* the intervenor specifically "protested the fact that it had not been included in the negotiations." *Id.* Due to the protest, the district court instructed the intervenor be involved in the negotiations. *Id.* Although Intervenor in the case at hand did not participate in the negotiations, it failed to make such an argument to the trial court. Rather, Intervenor simply argued its status as a party to the action required its consent to the judgment.

3. The consent judgment contains the following language: "[E]xcept for [Landowners], no individual or entity may make a claim based upon this Consent Judgment or assert that the failure of the County to abide by the terms of this Consent Judgment constitutes negligence or a breach of a legal duty or obligation." However, this does not preclude Intervenor from asserting a claim against County based on its own set of facts.

consent judgment entered into between County and Landowners.

#### [¶ 15.] II. Prescriptive Easement

[¶ 16.] The trial court granted a judgment on the pleadings in favor of County and Landowners as well as a summary judgment dismissing Intervenor's cross claim. Our standard of review of this decision is as follows:

A motion to dismiss under SDCL 15–6–12(b) tests the legal sufficiency of the pleading, not the facts which support it. *Estate of Billings v. Deadwood Congregation*, 506 N.W.2d 138, 140 (1993) (citing *Hunt v. Hunt*, 309 N.W.2d 818, 820 (S.D. 1981)). For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader. *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 226 (S.D. 1988); *Janklow v. Viking Press*, 378 N.W.2d 875, 877 (S.D.1985). "Our standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law?" *Billings*, 506 N.W.2d at 140 (citing *Jensen Ranch, Inc. v. Marsden*, 440 N.W.2d 762, 764 (S.D.1989)).

*Stumes v. Bloomberg*, 1996 SD 93, ¶ 6, 551 N.W.2d 590, 592. Therefore, we are to determine whether Landowners and County are entitled to a judgment as a matter of law.

[¶ 17.] Intervenor argues the trial court erred in granting a judgment on the pleadings, because the natural easement rights of Landowners in the flow of water crossing Fort Road have been restricted by prescriptive easement rights in favor of Intervenor. Having such prescriptive easement rights, Intervenor argues, prohibits County from installing more culverts which threaten Intervenor's land.

[¶ 18.] Prescriptive easements were discussed by this Court in *Wolff v. South Dak. Game, Fish & Parks Dep't*, 1996 SD 23, ¶ 28, 544 N.W.2d 531, 536 n.5:

Similar to adverse possession, "[t]o claim the benefit of an easement by prescription, a person must show open, continued, and unmolested use of the land in the possession of another for the statutory period. The statutory period for prescriptive easements, like that for adverse possession, is twenty years." *Travis v. Madden*, 493 N.W.2d 717, 720 (S.D.1992) (citations omitted).

[¶ 19.] Addressing Intervenor's contention that it possesses certain prescriptive rights, the trial court stated:

Really what the intervenor is claiming here is a prescriptive flood right. They are saying we think that we have a right to flood the plaintiffs' property because that culvert, that 36–inch culvert has been in that road for more than 20 years. And that essentially the Court believes constitutes the argument of the intervenor. The Court is of the view that as a matter of law a prescriptive easement will not begin to accrue until there is damage. There would be flooding damage or damage sustained by someone first before that prescriptive flood easement could be imposed against these plaintiffs and their property.

Support for this finding by the trial court is found in *Heezen v. Aurora County*, wherein farmers sought to enjoin County from diverting water into Crystal Lake, causing their land to flood. 83 S.D. 198, 200, 157 N.W.2d 26, 29 (1968). The farmers also sought damages as a result of the flooding, claiming the County did not possess a prescriptive right to flood their land. As to the issue of prescriptive rights, this Court stated: "The cause of action accrues and the statute begins to run when the landowner sustains the damage from the overflow." *Id.* at 206, 157 N.W.2d at 31. We also cited 54 CJS *Limitations of Actions* § 172 (now § 181), which states: "Where obstructions erected by defendant, or other acts or omissions by him, not of themselves unlawful as to plaintiff, cause water to overflow plaintiff's land, a cause of action accrues and the statute begins to run when plaintiff sustains damage from the overflow, not when the obstructions are erected or the other acts or omissions occur[.]" *See also* City of Mobile v. Jackson, 474 So.2d 644, 649 (Ala.1985) (stating, "[T]he construction itself did not create a cause of action and thus, whatever legal injury result-

ed from the construction created a cause of action when the injury occurred[.]"); *Baldwin v. Neal*, 190 Ark. 673, 80 S.W.2d 648, 650 (1935) (stating, "The cause of action did not exist until the injury occurred, though the faulty construction was a constant or potential threat or menace, which might or might not result in injury at some time, dependent, of course, upon conditions such as might prevail at any time after the completed structure had been built."); *Chicago, St. L. & N.O.R. Co. v. Hicks*, 249 Ky. 578, 61 S.W.2d 37, 40 (1933) (stating, "[T]he alleged injury to plaintiffs arose, not upon the completion by the defendants of their embankment, but only after their embankment had, by reason of its alleged negligent construction and maintenance, been permitted to slough off and wash into and fill the plaintiffs' ditch, then and thereby causing the overflow of their lands, resulting in the injury to their property, for which injury plaintiffs cause of action then arose."); *Schmutte v. State*, 147 Neb. 193, 22 N.W.2d 691, 695 (1946) (stating, "[T]he right to damages for an obstruction of a stream by an insufficient culvert or drain does not accrue when the structure is built, but when the overflow actually results.").

[¶ 20.] As stated previously, the required time for a prescriptive easement is twenty years in South Dakota. *Wolff*, 1996 SD 23, at ¶ 28, 544 N.W.2d at 536 n.5 Since the farms in *Heezen* were not flooded until six years before the prescriptive easement was allegedly acquired, there was no easement. 83 S.D. at 206, 157 N.W.2d at 31. Likewise, it is undisputed there has been no flooding of Intervenor's land for twenty years prior to the date this cause of action was brought. Rather, the flooding, if any, occurred within the past year or possibly two years. Therefore, the controlling case of *Heezen* provides that Intervenor's cause of action concerning a prescriptive easement is barred.

[¶ 21.] Intervenor cites *Nagel v. Emmons County N.D. Water Resource Dist.*, 474 N.W.2d 46 (N.D.1991), to support its argument that the prescriptive period begins when the road construction is completed. In *Nagel,* the drainage pattern was altered in 1965 by certain road construction, allegedly causing damage to plaintiff's property. In 1989, the plaintiff sued to enjoin the defen-

dants from flooding the land and for monetary damages. The court held the prescriptive period begins when the burden is placed on the land. *Id.* at 50. The burden was placed on the land when the construction project was completed, in 1965. *Nagel* does not support Intervenor's argument, however, as the plaintiff admitted he knew the construction project would cause damage to his property upon the completion of the project in 1965. *Id.* at 47. The plaintiff simply waited twenty-four years before he brought suit in 1989. In the case at hand, the construction changes which were completed in 1961 caused no burden to, or intrusion upon, any party's property until 1995. As we stated in *Kougl v. Curry*, "a use which is permissive is not adverse and will not ripen into a prescriptive right[.]" 73 S.D. 427, 432, 44 N.W.2d 114, 116 (S.D.1950).

[¶ 22.] In addition, Intervenor has yet to suffer any flooding damage, as it failed to assert monetary damages in its cross claim. In fact, Intervenor's cross claim states that "land owned or operated by Intervener [sic] *will be* flooded[.]" (Emphasis added.) "Generally, there is no actionable injury [for increases in volume or rate of water flow] unless flooding or erosion occurs." 1 *Waters and Water Rights* § 9.02(c)(2), at 431 (1991). In *In re Buttolph*, for example, the appellants claimed the decision to authorize construction of a dam was erroneous, but no monetary damages were sought. 147 Vt. 641, 527 A.2d 1147 (1987). Having no injury to their property, appellants were barred from claiming a common-law rights violation. *Id.* 527 A.2d at 1149.

[¶ 23.] There is yet another flaw in Intervenor's argument. Its cross claim asserts possession of a prescriptive easement as to Fort Road. However, Fort Road is County property, and one cannot obtain a prescriptive easement against the government. *Classen v. State, Dep't of Highways*, 621 P.2d 15, 17 (Alaska 1980) ("[A]n easement may not be acquired by prescription against the state."); *Randall v. Board of Comm'rs*, 77 Ind.App. 320, 131 N.E. 776, 779 (1921) ("No prescriptive right can be obtained against the government."); *Matthews*

*v. State,* 113 N.M. 291, 825 P.2d 224, 230 (Ct.App.1991) ("Absent a statute permitting the creation of an easement over lands owned by the state, an easement cannot be acquired against the state, its subdivisions or persons holding thereunder, no matter how long continued."); *City of Benton City v. Adrian,* 50 Wash.App. 330, 748 P.2d 679, 683 (1988) ("[A]n easement by prescription[ ] cannot be acquired to property held by a municipal corporation for public purposes in its governmental capacity."). Further, there is no allegation by Intervenor that trespass was committed by County by the building of the culverts.[4]

[¶ 24.] For the foregoing reasons, we agree with the trial court that Landowners and County are entitled to a judgment as a matter of law.

### [¶ 25.] III. Dismissing Certain Claims as a Matter of Law.

[¶ 26.] Intervenor also maintains the trial court erred in dismissing its claims and defenses (other than the claims pertaining to prescriptive easements) as a matter of law. Specifically, Intervenor asserts they are entitled to a trial on whether injunctive relief should be granted. However, Intervenor fails to recognize its basis for an injunction is the claim regarding a prescriptive easement, discussed above. A review of the pleadings reveals no other basis on which an injunction was to be granted.[5] Having held Intervenor acquired no such prescriptive rights, there is no need to address the injunction issue.

[¶ 27.] Intervenor also argues the trial court erred in failing to discuss the application of the reasonable flow doctrine.[6] However, there was no specific mention of this doctrine in the pleadings on which the motion to dismiss was granted by the trial court.[7] As we have stated numerous times, "[I]ssues not addressed or ruled upon by the trial court will not be addressed by this Court for the first time on appeal." *Watertown v. Dakota, Minn. & Eastern R.R.,* 1996 SD 82, ¶ 26, 551 N.W.2d 571, 577. Therefore, we will not now address the issue on appeal.

[¶ 28.] We also note the holding in this case does not bar Intervenor from pursuing an alternative cause of action in the event they suffer damages in the future as a result of flooding.[8] In addition, we acknowledge the changes made to Fort Road at least contributed to the increased flow of water,[9] but was

---

4. In fact, according to SDCL 46A–10A–71, County is obligated to keep drains across highways "free and clear of obstruction." Likewise, SDCL 46A–10A–78 confers upon County the power to extend, deepen, and widen such drains as involved in this case.

5. In its answer, Intervenor claims its prescriptive easement requires County to maintain the road and culverts in the same condition as existed in 1961; Landowners are not entitled to relief because the water contained in Cattail Lake is not part of the natural flow; and easement right is conditioned upon draining so as to not cause unreasonable injury. The cross claim against County states it is entitled to a prescriptive easement; such prescriptive rights have been violated by County; its lands will be flooded; there is no adequate remedy at law. Intervenor prays that Landowners' claim be dismissed; a determination be made as to its prescriptive rights; a recovery for costs; and a grant of permanent injunction against County to enjoin County from violating its prescriptive easement rights. No amendments to this answer and cross claim were filed.

6. "Under this rule each owner 'is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.'" *Mulder v. Tague,* 85 S.D. 544, 552, 186 N.W.2d 884, 889 (1971) (quoting 1A *Thompson on Real Property* § 266, at 384).

7. Although Intervenor's answer (not the cross claim) referenced the natural flow of water to Cattail Lake, there was no request for the trial court to consider the reasonable flow doctrine. During the hearing to the trial court, Intervenor mentioned in its offer of proof the application of the reasonable flow doctrine. However, there was no specific demand for the trial court to address the doctrine. The main focus was clearly the prescriptive easement assertion.

8. Although the judgment dismisses Intervenor's cross claim with prejudice, that is solely as to the prescriptive easement claim. In addition, it is noted counsel for County specifically stated during oral arguments that Intervenor was not precluded due to this proceeding from later asserting a cause of action against County.

9. Intervenor's brief contains the following description of the changes made to the road:

> In response to pressure from Plaintiffs and other landowners around Cattail Lake and

the increase more than the amount which would have resulted without the construction? In other words, would Intervenor's land flood solely because of the increase in precipitation? It is certainly possible County's "operations did not produce any greater flooding (both in terms of volume and of velocity) than would have occurred had the [new culverts] not existed[.]" 1 *Waters and Water Rights* 9.02(c)(2), at 434–35 (interpreting *Key Sales Co. v. South Carolina Elec. & Gas Co.*, 290 F.Supp. 8 (D.S.C.1968)). It is premature to discuss these issues in addition to the application of the reasonable flow doctrine when Intervenor has yet to suffer any damage resulting from flooding.

[¶ 29.] Therefore, we affirm the trial court's judgment on the pleadings in favor of County and Landowners.

[¶ 30.] KONENKAMP and GILBERTSON, JJ., concur.

[¶ 31.] SABERS, J., concurs in part and concurs in result in part.

[¶ 32.] MILLER, C.J., concurs in result.

SABERS, Justice (concurring in part and concurring in result in part).

[¶ 33.] I agree: (1) that the consent judgment may be approved without the consent of Intervenors; and (2) that Intervenors did not establish a prescriptive easement. I write specially to state that (3) Intervenors should have been provided an opportunity to present their case with respect to the unreasonableness of the flow of downstream waters.

MILLER, Chief Justice (concurring in result).

[¶ 34.] I agree that Intervenor had not yet obtained any prescriptive rights against Landowners. However, for reasons stated below I concur in result.

[¶ 35.] **I. Consent Judgment**

[¶ 36.] The majority opinion states that Intervenor's consent was not needed before the trial court could approve the consent judgment entered into between Landowners and County. As authority to support this proposition, it cites to the United States Supreme Court case of *Local Number 93 v. City of Cleveland,* 478 U.S. 501, 528–30, 106 S.Ct. 3063, 3078–79, 92 L.Ed.2d 405, 427–28 (1986). This Court is not bound, nor should it be bound, by this United States Supreme Court opinion. *See People v. Gillespie,* 136 Ill.2d 496, 145 Ill.Dec. 915, 557 N.E.2d 894, 897 (1990) (stating that "State courts are not required to follow United States Supreme Court precedent unless the result therein is mandated by the Constitution of the United States.") (citing *Harris v. Rivera,* 454 U.S. 339, 344–45, 102 S.Ct. 460, 463–64, 70 L.Ed.2d 530, 535 (1981)).

[¶ 37.] Intervenor entered into this action *as a matter of right.* SDCL 15–6–24(a). This statute provides in relevant part:

Upon timely application anyone shall be permitted to intervene in an action:

. . .

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Intervenor was permitted to intervene in this case precisely because its interests were not adequately protected by the original parties. The trial court recognized that Intervenor should have been made an original party, and was not originally joined as a party only because Landowners intentionally chose to

over the objections of landowners to the West below Hickman Dam, Marshall County agreed to install an additional 60–inch culvert in County Highway # 5. This 60″ culvert was installed in County Highway # 5 on April 26, 1996. At the time this new culvert was installed the water from Cattail [L]ake was already flowing in Cattail Creek through the outlet.

The additional 60″ culvert was installed with a gate that allows boards to be placed in the gate to shut down or restrict the flow through the culvert. A gate was installed so the flow from Cattail Lake could be maximized and still be able to regulate the impact downstream. This new 60″ culvert has flow capacity of approximately 150 cfs. (Citation omitted.)

exclude it and its members from the litigation.

[¶ 38.] By intervening as a matter of right under SDCL 15–6–24(a), Intervenor became a *real party* to the action. *Baldridge v. Reid*, 88 S.D. 374, 376–77, 220 N.W.2d 532, 534 (1974). As such, it became entitled to all the rights, benefits, and privileges of the originally named parties. This Court has held that it was improper to allow a voluntary dismissal of a case pursuant to SDCL 15–6–41(a)[10] when the intervenor did not sign the stipulation and agreement to allow dismissal. *Id.* This was true even though the intervenor's claim involved issues apart from the original parties' claims, and the intervenor would not have been bound by the dismissal. *Id.*

[¶ 39.] Likewise, this Court has held that when an intervenor was a party to a case, that case could not be dismissed after the original parties settled their dispute even though such a dismissal would not have been an adjudication of any of the issues raised by the intervenor. *Schoniger v. Logan*, 40 S.D. 30, 35, 166 N.W. 226, 228 (1918). These cases reflect the strong policy of this Court not to allow the original parties in an action to effectively eliminate an intervenor's claims when that intervenor has been made a party to the action as a matter of right.

[¶ 40.] Clearly, once an intervenor is made a party, the original parties should not have the opportunity to exclude the intervenor once again by entering a consent judgment without the intervenor. It has been noted that " 'the purpose of intervention is to settle in one action and by a single judgment the whole controversy among the persons involved[.]' " *Pine Lawn Bank & Trust Co. v. City of Pine Lawn*, 365 Mo. 666, 285 S.W.2d 679, 684 (1956) (citation omitted). This Court has also observed that "[t]he purpose of intervention is to obviate delay and multiplicity of suits by creating an opportunity to persons directly interested in the subject matter to join in an action or proceeding already instituted." *Jackson v. Board of County Comm'rs*, 76 S.D. 495, 502, 81 N.W.2d 686, 690 (1957). It stands to reason

that to fulfill the purpose of intervention and more importantly to protect the rights of *all* the parties to an action, intervenors should be parties to a consent judgment.

[¶ 41.] I assert that it was an error for the trial court to approve the consent judgment without the consent of Intervenor.

### [¶ 42.] II. Prescriptive Easement

[¶ 43.] I only concur in result because I disagree with the majority's analysis of when the prescriptive period begins to run.

[¶ 44.] The opinion cites *Heezen v. Aurora County*, 83 S.D. 198, 200, 157 N.W.2d 26, 31 (1968), for the proposition that the statute does not begin to run until the landowner's land is damaged by the overflow water. It also relies on 54 CJS *Limitations of Actions* § 181, which states in relevant part: "Where obstructions *erected by defendant, or other acts or omissions by him*, not of themselves unlawful as to plaintiff, cause water to overflow plaintiff's land, a cause of action accrues and the statute begins to run when plaintiff sustains damage from the overflow, not when the obstructions are erected or the other acts or omissions occur[.]" (Emphasis added.) In the present case, Intervenor had erected no structure nor done anything to cause water to overflow Landowners' land. The majority improperly focuses on the nature of the claimed prescriptive easement as an easement to flood Landowners' land. However, Intervenor is not claiming a right to flood, but rather is claiming a right to be free from drainage from Landowners' land.

[¶ 45.] The cases that the majority opinion cites in favor of its position involve a situation in which a defendant performed some affirmative act to flood the plaintiff's land. In *Heezen*, Aurora County was claiming a prescriptive right to flood Heezen's land. 83 S.D. at 200, 157 N.W.2d at 28. Heezen claimed that the manner in which the county "graded, maintained and improved" a road diverted water from one watershed to Crystal Lake which then overflowed and flooded Heezen's land. *Id.* The majority also cites *Schmutte v. State*, 147 Neb. 193, 22 N.W.2d

---

10. SDCL 15–6–41(a)(1)(b) states that a plaintiff can voluntarily dismiss an action "by filing a stipulation of dismissal signed by all parties who have appeared in the action."

691, 695 (1946), a case which like this one involved a culvert. In *Schmutte*, however, the issue involved was again whether or not the defendant had obtained a prescriptive right to flood, not whether or not there was a prescriptive right to be free from drainage.

[¶ 46.] This Court recognizes the principle that "the right to be free from the flow of surface waters may be acquired by the servient tenement by prescription." *Kougl v. Curry*, 73 S.D. 427, 431, 44 N.W.2d 114, 116 (1950). The Court in *Kougl* also noted that the law of prescription can extinguish the natural servitude that allows an upper property owner to discharge surface water over the lands of a lower property owner. *Id.* This is the nature of the right that Intervenor in the present case is claiming and thus the majority should recognize that such a separate right exists.

[¶ 47.] I therefore disagree and disassociate myself from the majority's characterization of this issue as a right to flood Landowners' land. The issue here is: When did the prescriptive period begin to run for Intervenor's right to be free from drainage off of Landowners' land? I concur in the ultimate result reached in the majority holding that

there is no indication that the twenty-year prescriptive period has yet run. For Intervenor to have extinguished through prescription Landowners' rights to drain water onto Intervenor's land, Intervenor's use of the road must have been "adverse" to Landowners' right. *Kougl,* 73 S.D. at 431–32, 44 N.W.2d at 116. The first adverse use by Intervenor did not occur until the water backed up onto Landowners' land within the last year or possibly two years. There is no other evidence of a time in which Intervenor relied on the road and the original culvert to be free from drainage from Landowners' land.

[¶ 48.] **III. Dismissing Certain Claims as a Matter of Law**

[¶ 49.] I agree with and join Justice SABERS' concurrence in result.